SOUTHERN RY. CO. v. POWER FUEL CO.

(Circuit Court of Appeals, Fourth Circuit. April 10, 1907.)

No. 681.

1. RAILROADS—FIRES.

Civ. Code S. C. 1902, § 2135, provides that every railroad corporation shall be responsible in damages to any person or corporation whose building or other property shall be injured by fire communicated by its locomotive engines or originating within the limits of the railroad's right of way in consequence of the act of any of its authorized agents or employés. Held, that where a fire was started by the negligence of the subboss of a railroad bridge and trestle crew, while using a boarding car as a place to sleep during the night, when he was not on duty, he was neither an agent nor employé of defendant within such section, and hence the company was not liable for the result of his acts thereunder.

2. MASTER AND SERVANT—ACTS OF SERVANT—LIABILITY OF MASTER.

Where a fire was negligently set by a railroad's subboss of a bridge and trestle crew, while he was sleeping in one of the railroad's boarding cars, when not on duty, his act was not performed in the business of the

railroad company. Hence the latter was not liable for the result thereof at common law.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 1225.]

In Error to the Circuit Court of the United States for the District of South Carolina, at Greenville.

C. P. Sanders (Sanders & De Pass, on the briefs), for plaintiff in error.

Stanyarne Wilson (J. A. Sawyer, on the brief), for defendant in error.

Before GOFF and PRITCHARD, Circuit Judges, and McDOW-ELL, District Judge.

McDOWELL, District Judge. This was an action at law brought by the defendant in error—to be hereafter referred to as the plaintiff—against the plaintiff in error, to recover damages for the injury to the stock, equipment, and buildings of the plaintiff at Union, S. C., from fire which originated in a boarding car belonging to the defendant.

It appears that the defendant had a work train for the use of one of its bridge and trestle crews, consisting of a car used as a cooking and dining place, a sleeping car for the two white members of the crew, a sleeping car for the negro members, and one or more cars for timber and tools. For a considerable time prior to the fire, which occurred about 11 o'clock on the night of October 22, 1904, this construction train had been placed at night after coming in from work on a short spur track close to the premises of the plaintiff. This spur track belonged to the Union & Glenn Springs Railroad Company; but it is abundantly shown that the defendant was authorized to use it for the purpose above mentioned. The foreman of the crew was a white man by the name of Pope. The only other white member of the crew was one Ayres, who died some time after the fire and prior to the trial. During the forenoon of the day preceding the fire Pope quit work and left the crew under the charge of Ayres. After the day's work was finished Ayres had his supper in the dining car, and then went into the town. He returned about 8 o'clock, and went to bed in the white sleeping car in the bed regularly used by him. In this car there was a portable kerosene lamp, provided by the defendant for the use of the occupants of the car. When this car was in motion, the lamp was usually placed in a wall bracket. On the night of the fire the lamp was on a table very near the foot of the bed used by Ayres. About 11 o'clock of that night the negro cook was awakened by cries of fire, and, on making his way into the sleeping car where Ayres was, he found the car filled with kerosene smoke and the bed and bedding ablaze. There is much evidence tending to show that Ayres, who at this juncture was standing at the window of the car, making no effort to subdue the fire, was very drunk. The alarm quickly brought numerous people to the scene, and the evidence of nearly every one who saw Ayres indicates that he was drunk. In fact, the cook appears to have found it necessary to bodily carry him from the burning car. The result of the fire was the destruction of

several of the cars and of the property of the plaintiff. It appears that Pope, the foreman, and McClurkin, the cook, were employed by the month. The remaining members of the crew, including Ayres, were paid monthly at a fixed rate per day, according to the number of days of work. Ayres was in some sense a "subboss." During working hours, in the absence of Pope, he had charge of the crew. There was some evidence tending to show that at night, Pope being absent, the negro members of the crew regarded Ayres as having charge of the work train. But all of the evidence was to the effect that after work hours Ayres was a "free man." He could sleep in the car or not as he saw fit, and it was clearly shown that he returned to the car merely in order to go to bed. Since 6 o'clock that afternoon he had done no work' whatever, and had none to do until the following morning at least. At the time the fire started he was in no sense engaged in performing any duty for the defendant.

The complaint is drafted under 1 Civ. Code S. C. 1902, § 2135, and also contains as a second cause of action a charge that the injury was the result of the negligence of the defendant. The statute referred to reads as follows:

"Every railroad corporation shall be responsible in damages to any person or corporation whose buildings or other property may be injured by fire communicated by its locomotive engines, or originating within the limits of the right of way of said road, in consequence of the act of any of its authorized agents or employees, except in any case where property shall have been placed on the right of way of such corporation unlawfully or without its consent, and shall have an insurable interest in property upon its route for which it could be so held responsible and may procure insurance thereon in its own behalf."

The assignments of error, in so far as they are now material, are based on the refusal of the trial court to direct a verdict and on the refusal to give certain instructions based on the theory that Ayres was not in the employment of the defendant at night after working hours. We regard the language of the statute, "its authorized agents" as being, so far as we are now concerned, synonymous with "employés." There was evidence tending to show that Ayres was drunk and also evidence tending to show that he in some way turned the lamp over. The one question for discussion is whether or not Ayres was at the time the fire was started an employé within the meaning of the statute.

So far as we are advised the Supreme Court of South Carolina has never ascribed to this statute any purpose other than to relieve one complaining of injury from fire originating on a railroad company's right of way of the necessity of proving negligence. Thompson v. Railway Co., 24 S. C. 369. It seems to have been repeatedly held by that court that this statute is to be strictly construed. Rogers v. Railroad Co., 31 S. C. 378, 9 S. E. 1059; Hunter v. Railroad Co., 41 S. C. 86, 19 S. E. 197; Lipfield v. Railroad Co., 41 S. C. 285, 19 S. E. 497. In 1 Sherman & Redfield Negligence, § 147, it is said:

"In determining whether a particular act is done in the course of the servant's employment, it is proper first to inquire whether the servant was at the time engaged in serving his master. If the act is done while the servant is at liberty from service and pursuing his own ends exclusively, there can be no question of the master's freedom from all responsibility, even though

the injury complained of could not have been committed without the facilities afforded to the servant by his relation to his master."

See, also, 1 Thompson, Negligence (Last Ed.) §, 526; 20 Am. & Eng. Ency. (2d Ed.) 168; Morier v. Railway Co., 31 Minn. 351, 17 N. W. 952, 47 Am. Rep. 793, and authorities there cited. We cannot in·reason ascribe to the Legislature in enacting this statute an intent to make the railroad companies liable for the acts of their employés when not on duty and when not engaged in the performance of some business of the master's. In the case at bar Ayres was not on duty. He was not performing any business of his employers. He was simply making use of. facilities allowed him by the defendant for his own purposes. We hold that his act was not, within the intent of the statute, the act of an employé.

From the fact that Ayres was not engaged in performing any duty as an employé, it also follows that the defendant is not liable under the common-law cause of action. We are therefore constrained to hold that the learned trial court was in error in refusing to direct a verdict for the defendant.

Reversed.

PRITCHARD, Circuit Judge. I concur in the conclusion reached, but not in the reasons assigned.

The complaint contains two causes of action, the first being based on the provisions of the 1 Civ. Code S. C. 1902, § 2135, as follows:

"Every railroad corporation shall be responsible in damages to any person or corporation whose buildings or other property may be injured by fire communicated by its locomotive engines, or originating within the limits of the right of way of said road in consequence of the act of any of its authorized agents or employees, except in case where property shall have been placed on the right of way of such corporation unlawfully or without its consent, and shall have an insurable interest in the property upon its route for which it could be so held responsible, and may procure insurance thereon in its own behalf."

In order to enable plaintiff to recover on the first cause of action, it is not necessary, as at common law, to show that the injury was caused by the negligence of the defendant company, but it must be shown by competent proof that the fire occurred by the act of an authorized agent or employé of the company. It would not be sufficient to simply show that a fire occurred on the right of way or premises of the company. Plaintiff was not only required to show how the fire originated, but was also required to show that the damage was caused by the act of an authorized agent or employé. Circumstances which barely create a suspicion as to how the fire may have occurred are not sufficient.

In the case of Manning v. Insurance Co., 100 U. S. 698, 25 L. Ed. 761, the court, among other things, said:

"We do not question that a jury may be allowed to presume the existence of a fact in some cases from the existence of other facts which have been proved. But the presumed fact must have an immediate connection with or relation to the established fact from which it is inferred. If it has not, it is regarded as too remote. The only presumptions of fact which the law recognizes are immediate inferences of facts proved."

It cannot be reasonably insisted from the evidence that the fire originated from .the act of Ayres. It was shown by uncontradicted evidence that immediately after the fire occurred Ayres said he "did not know whether it was a lamp exploded or not." He was the only person who' could have had knowledge as to the origin of the fire, and he stated positively that he did not know how it occurred. It appearing that he did not know how it occurred, it would be unreasonable to say that the jury could infer from the circumstances that the fire was caused by the acts of an employé or authorized agent of the defendant company.

There is considerable conflict of testimony as to whether Ayres was at' any time the authorized agent of the defendant company; it being insisted by the plaintiff in error that at the time the fire occurred that he was not in the employment of the company, his employment being such that, when his duties ended for the day, he was no longer responsible to the company and simply occupied the position of any other laborer, and therefore could not be deemed to be either an authorized agent or employé of the defendant company. However, the testimony of the witness Wm. McClurkin is to the effect that Ayres was a subforeman. He also testified that the night the fire occurred Pope was absent, and that Ayres was left in charge of the cars, and that he was acting as the representative of the company at the time the accident occurred. In my opinion it was not error in submitting this evidence to the jury as bearing upon the question as to whether Ayres was the authorized agent or employé of the company. The evidence was such as to raise an issue about which reasonable men might reasonably differ, and under these circumstances, as I understand the rule, it was the duty of the presiding judge to submit the same to the jury for their consideration. But I do not deem this phase of the question important, inasmuch as there was not sufficient evidence as to the origin or cause of the fire to warrant the jury in arriving at the conclusion that the acts of an authorized agent or employé of the company caused the same.

The facts and circumstances offered in evidence as to how the fire occurred are purely conjectural. According to the evidence, the fire may have originated by an explosion of the lamp or it may have originated by the lamp having been overturned by some one, but as to the particular manner of its origin there is not a single circumstance from which the jury could have inferred that it was caused by the acts of an authorized agent or by an employé of the plaintiff in error. There are many ways by which the fire could have originated from a kerosene lamp. It is a historical fact that the great Chicago fire was caused by a cow kicking over a kerosene lamp, and in that instance it was an easy matter to determine how the fire originated. The evidence of the milkmaid who was present at the time the fire originated showed conclusively that the cow kicked over the lamp, but in the case at bar the only person present stated immediately after the accident that he did not know whether it was the lamp exploded or not, which can only be interpreted to mean that it was not due to any act of his, and, although he was present, he did not know the real cause of the fire.

The second cause of action is at common law, and in considering the same it would be necessary to determine whether the alleged damage was caused by the negligence of the defendant company, its agents, or employés, but it is not necessary to consider this phase of the case, inasmuch as I am of opinion that there was not sufficient evidence to entitle the plaintiff to recover on the first cause of action.

For the reasons hereinbefore stated, I think the judgment of the Circuit Court should be reversed.