EXCELSIOR   PRODUCTS   MANUFACTURING COMPANY v. KANSAS CITY SOUTHERN RAILWAY COMPANY, Appellant.

Division One, December 31, 1914.

1. **MASTER AND SERVANT: Scope of Employment: Laborers Living in Bunk Cars: Escape of Fire: Washing Clothes: Not Necessary Incident of Living.** Railroad laborers, who while off duty and not in charge of an employee of the road, built a fire on the right of way and near the bunk cars in which they lived, for the purpose of heating water to wash their clothes, were not acting within the scope of their employment so as to render the railroad liable for their negligence to the owner of adjoining property destroyed by fire communicated from the one they built.

2. **NEGLIGENCE: Railroads: Combustibles on Right of Way: Evidence.** Where there is no evidence that any combustibles on the defendant railroad's right of way became ignited and communicated fire to the plaintiff's property, defendant's negligence, if any there was, in permitting combustibles to accumulate was not the proximate cause of the plaintiff's damage.

3. **NUISANCE: Bunk Cars for Laborers: Adjacent Property: Loss by Fire.** A railroad company did not create a nuisance by placing bunk cars, in which its laborers lived, on its right of way adjacent to the property of the plaintiff, and accordingly it is not liable on that ground alone for loss caused by a fire kindled on the right of way by the laborers to heat water to wash their clothing, and communicated to the plaintiff's property.

4. **NEGLIGENCE: Railroads: Dry Vegetation on Right of Way: Statutes: Loss by Fire.** Sections 3150 and 3151, R. S. 1909, relating to fires set out by engines and those communicated by the ignition of dry vegetation negligently permitted to remain on the right of way, do not render a railroad liable for damage caused by a fire kindled on its right of way by its laborers, outside the scope of their employment, and communicated to adjoining property without the ignition of trash or rubbish on the right of way.

5. **——: Escaping Fire: Liability of Owner of Premises.** The owner of premises who discovers fire thereon, for the origin of which he is not responsible, is bound to use ordinary care to prevent such fire spreading to adjoining property.

6. **MASTER AND SERVANT: Notice: Scope of Employment.** The knowledge of railroad laborers who, while acting outside the scope of their employment, kindle a fire on the right of way, is not to be imputed to the company so as to bind it to the use of due care to prevent the spread of fire.

7. **NEGLIGENCE: Master and Servant: Duty of Passenger Conductor Who Sees Fire From Train.** Where a passenger conductor saw on the right of way a fire burning under a wash kettle, in charge of laborers and not apparently dangerous to neighboring property, the company cannot be held liable, on account of his failure to stop his train and extinguish the fire, for any loss that may have resulted from its escape later.

Appeal from Jackson Circuit Court.—*Hon. J. H. Slover,* Judge.

Reversed.

*Cyrus Crane* and *George J. Mersereau* for appellant.

(1) On the whole case plaintiff was not entitled to recover. (a) Defendant is not liable for fire set out by its employees in furtherance of their own personal business. 26 Cyc. 1536, 1539-D; 20 Am. & Eng. Ency. Law, p. 526; Morrier v. Railroad, 31 Minn. 351, 47 Am. Rep. 793; Railroad v. Fuel Co., 152 Fed. 920; Railroad v. Shields, 47 Ohio, 387; Slater v. Thrasher Co., 97 Minn. 305; Railroad v. Harvey, 144 Fed. 806; Garretson v. Duenckel, 50 Mo. 104; Snider v. Railroad, 60 Mo. 419; Walker v. Railroad, 121 Mo. 584; Farber v. Railroad, 32 Mo. App. 378; Cousins v. Railroad, 66 Mo. 577; Hartman v. Muehlebach, 64 Mo. App. 574; Milton v. Railroad, 193 Mo. 56; Stringer v. Railroad, 96 Mo. 299; Sherman v. Railroad, 72 Mo. 62; Farber v. Railroad, 116 Mo. 81. (b) Defendant was not guilty of negligence after the fire was started on the right of way in failing to extinguish it. Kenney v. Railroad, 70 Mo. 252. (c) The charges of negligence contained in the petition considered in detail, under none of them is defendant liable. (2) (a) The court erroneously submitted this case to the jury on an instruction as to the measure of damages only. (b) The court erred in refusing defendant's instructions withdrawing from the jury's consideration each separate charge of negligence. (c) The court erred in refusing defendant's instruction 8-D. The evidence was not sufficient to make out a statutory fire case much less one at common law. Manning v. Railroad, 137 Mo. App. 631; Gibbs v. Railroad, 104 Mo. App. 276; Markt v. Railroad, 139 Mo. App. 456; Foster v. Railroad, 143 Mo. App. 547.

*Joseph P. Fontron* and *Fyke & Snyder* for respondent.

(1) The placing and maintaining, without necessity, in an open and sparsely settled country territory, of the string of bunk or living cars in immediate and close proximity to plaintiff's property, inflammable and combustible, at a point where rubbish, trash, loose bark, sticks and scraps of wood were collected or were likely to accumulate, in which bunk cars these irresponsible employees were kept and maintained, as a part of the consideration of their employment, as is disclosed in evidence, where they carried on the ordinary, customary and usual activities and work connected with daily living, such as cooking, washing, with the necessary and constant building of fires therefor, whether in, around or about said cars, with the continuing menace of the danger of escaping and flying sparks in the face of customary and usual south winds which generally prevail during the month of April in each year in this climate, whether said sparks be blown from smokestack or from fires built on the adjacent right of way, constitutes a nuisance, for the maintenance of which defendant was negligent, and for resulting damages occurring by reason of its existence, the defendant is justly liable.   Scalpino v. Smith, 154 Mo. App. 534; Berger v. Gas Light Co., 60 Minn. 296. While no such case exactly like this one has been pleaded or proved that we know of, yet on principle other cases sustain us in the above contention. Vaughan v. Menlove, 3 Bing. N. Cas. 468, 32 E. C. L. 208; Railroad v. McGrath, 160 S. W. 444; Rolfe v. Railroad, 69 N. H. 476; Harrington v. Railroad, 143 Mo. App. 418; Marine Ins. Co. v. Railroad, 41 Fed. 643; Pratt v. Railroad, 139 Mo. App. 502.   The fact is, the proximate cause of the setting out of the fire was the placing of the dangerous agent in close proximity

263Mo10

to plaintiff's property in the first place. If the cars and those in them had not been thus constituted a nuisance to plaintiff's property, manifestly the little camp fire never would have been set out at that place. Ross v. Traction Co., 224 Pa. St. 86; Pratt v. Railroad, 139 Mo. App. 502. Counsel for appellant asserts that defendant is not liable for fire set out by its employees in furtherance of their own personal business, and we take no exceptions to what they have to say with regard to the general law upon that proposition, but say that the cases cited by them under that head are not in point or decisive of this case in the light of the evidence. (2) After these negro laborers had started the fire and the danger from said fire was apparent, and after defendant's conductor Courtway had seen the fire, and while Stiles was there at the line of bunk cars, no one representing the Railroad Company attempted to put the fire out. Elliott on Railroads, sec. 1229. It has been held, however, that though the servants and agents of a railroad company may have been acting without the scope of their employment in kindling the fire, the company may yet be liable, if under the circumstances negligence in failing to prevent the spread of a fire can be imputed to it. Railroad v. Ford, 65 Ark. 96; Morier v. Railroad, 31 Minn. 351; 13 Am. & Eng. Ency. Law, p. 440. (3) We think that under the evidence in this case it was proper to submit to the jury the question as to whether or not the fire was set out by the men under the permission, sanction or understanding or general custom of the defendant. Railroad v. Nitsche, 126 Ind. 229; Grant v. Railroad, 94 Mo. App. 312; Lewis v. Schultz, 98 La. 341.

BLAIR, C.—This appeal is from a judgment for $35,000 for damages by fire to plaintiff's factory and raw material.

Plaintiff manufactured excelsior, and on its lot adjoining defendant's right of way had its factory and had collected a large quantity of cottonwood which was stacked north of and near-plaintiff's private switch track which was on the south part of its lot. South of this was the north line of defendant's right of way and near that line defendant had a switch track on which it had placed some "bunk" cars in which were housed some laborers who were engaged in constructing for defendant a concrete subway some hundreds of yards west of these cars. One Sunday morning, in April, one of these laborers built a fire on the right of way south of the "bunk" cars for the purpose of heating water to wash clothing. A south wind was blowing and soon plaintiff's wood was discovered to be on fire and in a short time the wood and factory were in flames.

The specific allegations of negligence are as follows:

"Plaintiff further states that at said time one of two alternatives was true, and plaintiff is ignorant of which alternative was true, viz: that either said employees or concrete men were under the direct charge, care, protection and direction of a foreman, Oscar Carrington, and a subforeman or straw boss, whose name was Frank Stiles, whose general duties were to care for, oversee and watch over said cars and said employees, and to see that nothing was done by said employees in the ordinary acts of living in or about said cars that would endanger the property of this plaintiff and others having property along the right of way of defendant; or said employees were carelessly and negligently permitted by defendant to be and remain and live in and about said cars without being placed in charge of any foreman, overseer or guard; that on said 11th day of April, 1909, said string of cars was yet standing in said place on said side track south of the cord-wood piled along on plaintiff's ground some

thirty feet west of the factory of the plaintiff; that said day was Sunday, and the wind at said time was blowing at a high velocity from the south—from the direction in which said cars stood, toward the property and cordwood of this plaintiff; that at said time the said cars were occupied and used by the said employees of the defendant aforesaid, and said cars and employees were then and there in the charge and care of the defendant's said foreman, or straw boss, Frank Stiles, as aforesaid, or were carelessly and negligently permitted by defendant to be and remain in and about said cars without being placed in charge of a foreman, overseer or guard.

"Plaintiff further states that on said day and at about 10 o'clock a. m. of said day, one or more of the said employees or concrete men, the agents and servants of the defendant, whose names are now unknown to plaintiff, while in the employ of defendant and while in the pursuit of the ordinary duties of living in and about the said bunk cars, as provided for by defendant, carelessly and negligently built and caused to be built a fire upon the ground along the side of the east car of said string of cars belonging to defendant, for the purpose of heating some water over said fire, and built said fire within a small circle of a single tier of bricks, making said fire of wood; that said place was a dangerous place in which to build a fire as said Frank Stiles and said employees knew or in the exercise of care and caution should have known; that the water was heated by placing a bucket of water and resting same upon said bricks and the blaze of said fire arose at said time high about said bucket; that the defendant had carelessly and negligently permitted an accumulation of straw and debris on said right of way under said car and over to the property of the plaintiff; that at said time said fire blazed up fiercely and the said high wind catching said flame and sparks, caused said sparks to be passed and carried and communicated

across and to the said trash and debris and through the air across the intervening distance between said car to plaintiff's property, causing plaintiff's property to become ignited and burned; that the said employees of the defendant at no time after building said fire and when they saw said fire threatening and dangerous to plaintiff's property, made any effort to extinguish said fire or to prevent said fire from spreading and being carried across the said right of way to the said cordwood of the plaintiff; that said fire spread through said cordwood with great velocity and communicated to said factory belonging to plaintiff, entirely destroying said factory and destroying said cordwood.

"Plaintiff further states that it would not have suffered said loss by said fire if it had not been for the carelessness and negligence of the defendant, its agents and servants as aforesaid, in this, to-wit:

"1. That it was careless and negligent of the said defendant, its agents and servants, to place said living or bunk cars in and upon said sidetrack in such close proximity to plaintiff's property, as to make it highly dangerous to plaintiff's property to have said living cars so close to said plaintiff's property, in view of the necessity of said employees or said section men to do and perform the ordinary and customary duties connected with living, such as building fires for preparing meals, heating water and other necessary things for which fires are built in ordinary modes of living; and that it would so be highly dangerous and hazardous to plaintiff's property for said living or bunk cars to be so placed and used, was known to defendant, its agents and servants, or in the exercise of ordinary care and prudence could have been known by it and them.

"2. That it was careless and negligent in said defendant and its said subforeman, Frank Stiles, then and there in charge of said employees and said cars, to

permit said employees to build said fire at said time and place, in a position so near to plaintiff's property and in the face of such a high wind, making it a dangerous place in which to build said fire, all of which was well known to said Frank Stiles and to the said employees, or in the exercise of ordinary care and prudence could have been known; or by the other alternative, if defendant had no foreman, overseer or guard over and in charge of said employees, it was careless and negligent in not placing a foreman, overseer or guard over said employees in charge of them to prevent them from setting out or building fires alongside of or near plaintiff's property to endanger same.

"3. That it was careless and negligent on the part of the defendant, its said agents and servants, the said subforeman and said employees, to permit and allow said fires so built upon its said right of way, to be blown, spread and escape from defendant's said right of way to plaintiff's property.

"4. That it was careless and negligent in the said defendant and its said agents and servants, the said subforeman and said employees, in failing to extinguish said fire after it had been built upon said right of way and in failing to prevent its spreading after they saw or in the exercise of ordinary care and judgment should have seen that said fire was exceedingly hazardous and dangerous to plaintiff's property.

"5. That it was careless and negligent on the part of the defendant, its agents and servants who had charge of the said tracks and right of way of defendant at said place, to permit or allow rubbish, trash or debris to gather and accumulate upon said tracks and right of way, whereby fires set out by said employees of defendant could spread and communicate from said right of way to the said property and cordwood of the plaintiff, and that such accumulation of rubbish, trash and debris would be dangerous to plaintiff's property in case of such a fire, was well known to the defend-

ant, its agents and servants, or in the exercise of or-
dinary care and prudence, could have been known by
them.''

The answer was a general denial.

The evidence tended to show that on the Sunday
morning when the fire occurred the wind was blow-
ing strongly from the south and the weather had been
clear for several days; defendant's bunk cars, occupied
as living quarters by some fifteen laborers employed
on week days in constructing a concrete subway 600 or
800 feet west of the cars, had stood for some weeks up-
on a switch track near the north boundary of defend-
ant's right of way and some six or eight feet south of
plaintiff's private switch track on its lot; north of
this last mentioned track plaintiff had piles of cotton-
wood intended for use in the manufacture of excelsi-
or; there is some evidence that there was some loose
wood near the north side of the private track; on Sun-
day morning, April 11, some of the laborers built a
fire for the purpose of washing their clothing; this
fire they built between the bunk cars and defendant's
main line track at a point about 25 feet from the near-
est of plaintiff's wood and about 50 feet west of its
factory; pieces of bark and wood were used in build-
ing the fire and it was built around a bucket or can
placed on bricks and filled with water; it appears that
this fire was kindled probably about 9 a. m. and that
some of the laborers were seen around it; 30 or 40 min-
utes later fire was discovered in the wood about 25 feet
north and when discovered was nearly or quite beyond
control; in a very few minutes the factory caught and
was quickly consumed.

The men did not work on Sundays and were not
on duty on the Sunday morning in question and had
not been since six o'clock p. m. the preceding Satur-
day; they were free to come and go as they pleased
except while at work on the subway on week days;
they paid for their own provisions and paid their cook,

the amounts being prorated and paid out of their wages by the foreman; there is some evidence that the stoves in the cook cars were available for heating water for washing, but it does not appear they were so used nor does it appear that any arrangement for washing or laundry work was made by defendant nor that the men made any joint arrangement concerning it; there is no evidence defendant furnished any untensils for that purpose or concerned itself with the matter further than that the foreman testifies he directed that no fire be kindled outside on April 11, his attention being drawn to this possibility by one of the men asking him on Saturday to buy him a cake of laundry soap.

The man designated as foreman superintended the work on the subway, but did not stay in or near the bunk cars at night or on Sundays, and there is no evidence defendant charged him with any duty of oversight except on the work on the subway. One Stiles, a carpenter, at times acted as "straw boss," which term seems to mean (in this instance, at least) a sort of substitute foreman, selected by the foreman to act in the latter's absence. Stiles slept in one of the cars, and there is some testimony he was in his car on the Sunday in question, though no one testifies he saw him there or that Stiles saw the fire at any time or was himself seen about the cars that morning. There is no substantial evidence Stiles had any authority to superintend the laborers outside of the hours they were actually employed on the subway. One witness did testify that when Carrington, the foreman, was not present "they looked to" Stiles, adding: "There had to be somebody around there to govern them or the deuce would be to pay. There always was a white man there usually." On motion of defendant's counsel, plaintiff's counsel consented to have this last quoted portion of the answer stricken out.

There was some evidence tending to show that the men had done some washing on previous Sundays, but

no evidence they had previously built a fire at the place the fire was built on the day the loss occurred.   One witness testified that all previous fires had been built some distance south of the bunk cars, across the tracks therefrom.   Another testified fires had previously been built "out on the tracks; that is, between the tracks." The other witnesses added nothing to this.   There were at least three tracks south of that on which the bunk cars stood—and perhaps others.   The country was open—a house here and there.   The switch track south of the main line tracks was used for oil cars and in making up trains.

As to the condition of the right of way around and under the bunk car, one witness described it thus: "Well, there were a few dry weeds and a few green weeds and then some scraps of cordwood bark and little chunks of coal, and everything."   Another said the ground "was pretty well cleaned up around there." The other witnesses were not questioned about it.

There was no testimony that debris on the right of way caught fire or that there was any fire on the right of way except that kindled by the men to heat water for washing.

I.   The workmen were off duty and in kindling a fire to wash their clothing were not acting within the scope of their employment.

"A master is not responsible for any act or omission of his servants which is not connected with the business in which they serve him, though in general he is responsible for the manner in which they execute his orders and for their negligence in selecting means by which the orders are to be carried out. In determining whether the particular act is done in the course of a servant's employment, it is proper, first, to inquire whether the servant was, at the time,

Master and Servant: Scope of Employment.

engaged in serving his master. If the act was done while the servant was at liberty from his service and pursuing his own ends exclusively, there can be no question that the master is not responsible, even though the injuries complained of could not have been committed without the facilities afforded by the servant's relations to his master. [Shearman & Redfield on Negligence, sec. 63.]'' [Garretzen v. Duenckel, 50 Mo. 104; Milton v. Railroad, 193 Mo. l. c. 55, 56.]

This principle has been applied to facts bearing considerable resemblance to those in this case. In the United States Circuit Court of Appeals for the Fourth Circuit, the case of Southern Railway v. Power Fuel Co., 152 Fed. 917, was decided. In that case the defendant had placed near plaintiff's property bunk cars occupied by laborers engaged in building a trestle. One Ayres, a subboss, who had, in the foreman's absence, charge of the men while at work on the trestle, occupied one of these cars. Some of the negro laborers regarded Ayres as in charge at night in the foreman's absence, but the evidence all showed (the court says) he was, outside of regular working hours, "a free man." His car was provided with a kerosene lamp. On the night of the fire Ayres seems to have been drunk, and when fire was discovered in his car was standing at the car window making no effort to subdue the fire. The car was filled with kerosene smoke and the bedding was ablaze. It was held that plaintiff could not recover because Ayres "was not engaged in performing any duty as an employee," and defendant was, therefore, not liable, either under the common law or the South Carolina statute.

A case on the same facts (North River Ins. Co. v. Southern Ry., 93 S. C. 358) was instituted in the State court. The Supreme Court of South Carolina, on appeal from a judgment on a verdict directed for defendant, remanded the case on the ground that there was evidence in the record tending to show that Ayres

was the agent of defendant and acting foreman and in charge of the train at the time. Under a South Carolina statute railroads are liable for all loss resulting from fire originating on their right of way from the acts of employees, negligent or otherwise. The evidence is not reported, simply the conclusion of the court as to its tendency to prove that Ayres was at the time on duty as defendant's employee. It does not appear, therefore, what difference the evidence showed when compared with that in Southern Railway v. Power Fuel Co., supra.

In this case there is no substantial evidence that Stiles was in charge of the cars or had any duty to perform except while at work on the subway. The evidence in this case, in this particular, is strikingly like that reported in Southern Railway v. Power Fuel Co.

Clark v. Railroad, 129 Fed. 341, subsequently referred to, clearly affords plaintiff no support on the branch of the case now being considered. There the ground of liability was the negligent failure to prevent the spread of fire after notice of its presence in ample time to have prevented loss. It did not turn in any sense on any relation to defendant borne by those who kindled the fire.

In McLaughlin v. Tie & Post Co., 119 Minn. 454, defendant's foreman and another, by its direction, were driving a raft down a natural stream flowing through plaintiff's lands, and it became necessary, at a point near plaintiff's house, to remove from the stream a stump which interfered with their progress. To dry their clothing defendant's employees then kindled a fire which spread and destroyed plaintiff's timber, poles, etc. The court held that "the execution of the work intrusted by the defendant to its employees required them to pass over the plaintiff's land along the banks of the stream, and the defendant owed to the plaintiff the duty of exercising due care to pre-

vent injury to the plaintiff's land in the course of the work assigned to its employees. The building of the fire by the driver to dry his clothes was not, as a matter of law, a departure from the course of his employment, for it was incidentally connected therewith, and was made necessary by his going into the stream to remove the obstruction, which was a part of the work assigned to him.''

The court points out the distinction between that case and Morier v. Railroad, 31 Minn. 351, saying that in the Morier case the facts were ''that the employees of the defendant were engaged in repairing its railroad track and were charged with no duty outside of it. They usually went to their boarding house for their dinners, but on the day in question they brought their dinners with them, and at noon left their work, went upon the right of way and built the fire, which destroyed plaintiff's property, for the purpose of warming their coffee. These special facts distinguish that case from the one at bar.''

In like manner is this case distinguished from the McLaughlin case, and for stronger reasons. The Morier case has been criticized in Baxter v. Railroad, 73 Minn. 1. c. 191, but that criticism was leveled at that part of the opinion which refused judicial notice that duties of section men included the extinguishment of fire on the right of way, in some circumstances. That criticism did not affect the decision in so far as it held that in kindling the fire the section men were not acting within the scope of their employment.

Nor is the washing of clothing by employees, for themselves, such a necessity of usual modes of living that it can be said that courts can say employment of the kind shown in this case includes it as an incident and as incidental to the employment. Such a view has been taken by some courts of eating, drinking and other absolute necessities, but none, so far as we dis-

Necessity of Usual Mode of Living.

Excelsior Products Mfg. Co. v. Railroad.

cover, has applied such a rule beyond the actual necessities of living.

The cases in which servants have negligently left water running in lavatories provided for their use are not in point or of like character. They depend upon negligence in the use of conveniences furnished by the master, for both the control and use of which he is legally responsible.

There is no principle which justifies the conclusion that the men, in kindling the wash fire, were acting within the scope of their employment, and the judgment cannot be maintained on that ground.

II. There was no evidence that combustibles negligently allowed to collect on the right of way became ignited and thus communicated fire to plaintiff's wood. As a consequence there is, of course, no support for the allegation that defendant's negligence in permitting combustibles to accumulate was the proximate cause of the fire. In these circumstances the question whether there was substantial evidence of the negligent accumulation of combustible matter on the right of way need not be discussed.

*Combustibles on Right of Way.*

III. The contention most strongly pressed by plaintiff's counsel is that by placing the bunk cars where it did, occupied as they were, the existing circumstances considered, defendant created a nuisance which caused loss to plaintiff, and must, consequently, respond in damages.

*Nuisance: Bunk Cars for Railroad Laborers.*

In this connection plaintiff relies upon some facts of which there is no evidence and some others which in no way contributed to the loss. These must be eliminated. The debris on the right of way, even if it be assumed there was substantial evidence of a negli-

gent accumulation of it, is negligible because it in no way contributed to plaintiff's injury; nor does the fact, if it be a fact, that the bunk cars were furnished in part consideration of the services of the laborers add anything to plaintiff's case; nor is there any evidence that the laborers were "irresponsible" in the sense in which counsel use the term; nor is there any evidence that fire used in the cars in cooking or otherwise contributed to the ignition of plaintiff's wood; nor is there evidence of "constant building fires around . . . or about" the cars, nor of the building, previously, of any fire outside the cars at the place the fire was built April 11 or at any other place by which plaintiff's property was endangered; nor is there any evidence that for any considerable time previous to the morning mentioned there had been any loose wood on plaintiff's lot.

Eliminating these things and looking to relevant facts supported by substantial evidence, it appears that plaintiff's real position is that living quarters for laborers near cordwood constitute a nuisance because the ordinary processes of living include the washing of clothes and the use of fire in that connection.

In support of their position counsel cite several decisions. Manifestly the rule that one may not, in blasting, cast stones upon his neighbor's property and escape liability for ensuing damage (Scalpino v. Smith, 154 Mo. App. l. c. 534) is not applicable. In the case cited there was a direct invasion of another's right by an act defendant did or authorized to be done. Whether done negligently or with due care, defendant did it. In the use of fire ordinary care (in the absence of a controlling statute) is a defense (Berger v. Gaslight Co., 60 Minn. l. c. 300, 301), and negligence must be proved before liability for its escape arises.

**Escaping Fire: Ordinary Care.**

Nor, for the same reason, is the rule applied in this last cited case (cited also by plaintiff) that one who

collects petroleum on his premises and allows it to escape and go upon those of another, is liable without regard to negligence, applicable here.

The case of Vaughan v. Menlove, 3 Bing. New Cas. 468, is likewise inapplicable. In that case defendant stacked hay near plaintiff's cottage with notice that the condition of the hay was such that spontaneous combustion was likely. It ensued and defendant was held on the ground of his own negligence.

St. Louis Southwestern Railway v. McGrath, 160 S. W. (Tex.) 444, simply applied the rule that a railway consenting to the use of its road by the engines of another was liable for loss resulting from fires negligently set out by such engines.

In Rolfe v. Railroad, 69 N. H. 476, it was decided that heating a car to prevent the freezing of vegetables was reasonable and necessary and a part "of the actual operation of the road" and that the company could not escape liability to a third person for the destruction of his storehouse by fire resulting from negligent management of fire in the car by the shipper of the vegetables, whom it permitted to maintain the fire in consideration of his relieving the company of loss to him from the freezing of his vegetables. The court said the company could not avoid liability for damages from negligent exercise of its extraordinary powers by contracting for their exercise by some irresponsible person. In other words, it held, in effect, that defendant was negligent in the *operation* of its road and was liable on that ground.

In Harrington v. Railroad, 143 Mo. App. 418, a judgment was affirmed in which the trial court found, in effect, that mules shipped in a car in which hay had been placed for bedding had been injured by reason of fire which caught from sparks, the car having been negligently placed too near the engine.

In Pratt v. Railroad, 139 Mo. App. 502, a judgment was affirmed for damages for the death of a

switchman, killed at night by being thrown under the wheels of a car on which he was riding when it came into collision with another which a brakeman negligently stopped before it cleared the "lead track" along which the moving car was passing. This was a case of simple negligence of an employee, as was the preceding case.

In Ross v. Traction Co., 224 Pa. St. 86, defendant was held liable for the death of a child of seven whose clothing caught fire from embers fanned into a blaze by the wind, the fire having been set out by defendant's servant acting in the scope of his employment, but negligently left by him before it died to the point of harmlessness.

The case of Marine Ins. Co. v. Railroad, 41 Fed. 643, is cited. The Circuit Court for the Eastern District of Arkansas found that about 4000 bales of cotton had accumulated, filling warehouses of a compress company and sheds not intended for storing cotton, and also being piled along and across a public street (of Little Rock) leaving only a narrow passageway for public use. The cotton was exposed to sparks from engines, and for five weeks persons smoking cigars and cigarettes were continually passing through the narrow passageway left. The cotton had caught fire more than once previously.

The court found that defendant was responsible for the accumulation of the cotton and that the cotton *in the street,* in the circumstances, constituted a nuisance, and that cotton having caught fire and that fire having been communicated to the cotton insured by plaintiff, defendant was liable for damages for the loss.

On appeal a like case (St. Louis, I. M. & So. R. R. v. Ins. Co., 139 U. S. 223) was reversed for error in instructions submitting the question of defendant's responsibility for the accumulation of the cotton, and

subsequently the case cited was reversed on stipulation (154 U. S. 515).

Waiving the weakening effect of these matters, the case is nevertheless not authority for plaintiff's position. It may be conceded that the placing of combustible matter, such as cotton, in a public street and leaving it there for five weeks constantly exposed to fire dropped by careless passersby who several times set the cotton on fire, constituted a nuisance. The fire causing the loss was actually set by a boy lighting a cigarette (139 U. S. 223).

That is not this case. It cannot be said that bunk cars, properly constructed, are nuisances in all cases, though occupied as living quarters by laborers. Nor does it appear there was any danger of fire in plaintiff's wood in this case from any reasonable use of the cars themselves, nor that loss resulted from any use of the cars. Plaintiff's loss resulted from the negligence of the men in kindling the wash fire at a place at which, so far as the evidence shows, they had not kindled a fire previously.

The nuisance in this case, if nuisance it can be called, required the addition, to what defendant did, of the negligence of the men. Unless defendant is responsible for that in some way it is not responsible for the so-called nuisance of which that negligence is an essential element.

In the case of Marine Ins. Co. v. Railroad, supra, the conditions which resulted in the ignition of the cotton were present and apparent when the cotton was put in the street, and the obstruction of a public street is in itself a nuisance. In this case the cars were on defendant's own property and the element which endangered and destroyed plaintiff's property was added by the negligent act of the men occupying the cars.

"The liability of a defendant for injuries caused by a nuisance depends solely upon whether it was

caused or continued by him'' (6 Labatt on M. & S. [2 Ed.], sec. 2396) and, conversely, he must cause or continue it or he is not liable.

It is suggested that the washing of clothing is a necessary incident to ordinary modes of living and and that the use of fires outside the cars was a necessary means of performing this function. No cases are cited in support of this view, though there are authorities which apply such a principle to the absolute necessities of living, such as eating, drinking, etc., but none, so far as we can find, which go to the length plaintiff's suggestion goes.

So far as the argument as to the creation of a nuisance is concerned, in this case, it is clear enough that plaintiff's position can be supported only on the theory that defendant was in some way responsible for the act of the men in kindling the fire, and this depends simply upon the question of defendant's responsibility as master. That question has already been considered.

IV. It is argued, in substance, that the fact defendant did not, before plaintiff's wood was ignited, extinguish the fire kindled by the laborers, constituted actionable negligence.

**Duty of Passenger Conductor: Notice.**

As already pointed out, defendant cannot be held responsible for the act of the men in kindling the fire in the first instance. Neither is there any evidence that dry weeds or other combustible matter on the right of way contributed to plaintiff's loss. The plaintiff is not, therefore, aided in any way by the sections of the statutes (Secs. 3150, 3151, R. S. 1909) relating to fires set out by engines and those communicated by the ignition of dry vegetation and undergrowth negligently permitted to remain on the right of way. The facts of this case do not bring it within their purview.

We do not understand plaintiff to contend that a railroad company is liable in every case for damages resulting from loss from fire on its right of way originating from no act of its own, negligent or otherwise. Nor could such a contention be successfully maintained. The rule is that the owner of premises who discovers fire thereon, for the origin of which he is not responsible, is bound to use ordinary care to prevent such fire spreading to adjoining property. [Baird Bros. v. Chambers, 15 N. D. 618.] Apply it to this case. The knowledge of the laborers of the existence of the fire they kindled on the right of way was not defendant's knowledge, for the same reason that their act in kindling the fire was not defendant's act—they were not acting for defendant or within the scope of employment by it at the time.

The only evidence that the fire was seen by any employee of defendant before plaintiff's wood caught fire is that which shows it was seen by a conductor of one of defendant's passenger trains which passed the spot at 9:25 a. m., but a few minutes before the wood caught and the fire therein got beyond control. When the conductor saw the fire he was engaged in taking his train into Kansas City; the fire was in charge of the laborers who had kindled it; the bunk cars were between it and plaintiff's wood, which was twenty-five feet away, and there was no fire other than that under the wash kettle. It does not appear that the conductor knew of any loosely piled wood upon plaintiff's lot or that any other employee or representative of defendant had knowledge of it, nor does it appear that the cordwood in ricks or stacks could reasonably have been expected to catch from sparks from the fire mentioned. The failure of the conductor to stop his passenger train to extinguish the fire under the wash kettle did not, in the circumstances, constitute negligence. There is no evidence defendant imposed any such duty upon its passenger conductors, and it would too much

endanger the lives of passengers, whose safety so much depends upon trains complying with their schedules, for the courts to require the stopping of passenger trains in order that those in charge might extinguish fires on the right of way, in circumstances like those in this case at least. [Railway v. Donaldson, 73 Tex. 124; Pittsburgh, etc., R. R. v. Brough, 168 Ind. 378.] It is also clear there is no evidence the conductor had any opportunity to report the fire to defendant in time for it to have saved plaintiff's property. That phase of the case need not, therefore, be discussed.

In any view, consequently, there is no substantial evidence to support the contention that there was a negligent failure to extinguish the fire.

The case of Clark v. Railroad, 129 Fed. 341, does not support plaintiff's position. In that case some of the facts bore considerable resemblance to those in this case. A gang or crew of laborers, housed in bunk cars, kindled fires, for washing clothes, near plaintiff's warehouse and maintained such fires all day. Defendant had notice, however, *in the forenoon,* of the fires and of the danger to plaintiff's property, but took no precautionary measures. The warehouse caught fire at 11 p. m., the fires first having been kindled about 9 a. m. Defendant was held liable on the ground of its failure, after "the fires became a known fact and condition on" its premises, to employ ordinary care to prevent damage to adjacent property, that question and that as to plaintiff's contributory negligence being for the jury. In that case there was notice and ample time thereafter to act. In that vital particular it differs from this case.

The judgment should be reversed. *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court. All of the judges concur.