# LILLIAN KRINARD v. CLARENCE M. WESTER-MAN, Appellant.

### Division One, December 1, 1919.

1. **NEGLIGENCE: Inferred from Facts.** If the legitimate inference which may be drawn from the facts establish the negligence alleged, the case of negligence is made.

2. ————: ————: **Malpractice: Operation By Surgeon.** Plaintiff was afflicted with a fibroid tumor of the uterus, and applied to defendant to remove it, and in the operation he cut a hole in her bladder, and tied off one of the ureters. Plaintiff alleged that these things were negligently done, and the defendant asserted that they were necessary because the parts were diseased and cancerous. The evidence shows that immediately after the operation he pronounced it a perfect success, and did not for a month inform plaintiff that he had made an incision in the bladder, and then when informed that there was a constant flow of urine he told her that he had done so in order to remove the diseased parts and that there would have to be a second operation, although he had all along told her and her friends that she was getting along nicely. When the necessity for a third operation arose, she suggested that a famous surgeon be called to assist, at which he became enraged. Both before and after this third operation she was examined by other physicians who found no evidence of diseased or cancerous conditions. The evidence showed that the tieing of the ureter would kill the kidney, and that prior to the operation the kidney was healthy and normal, and afterwards it had no life in it. *Held*, that negligence could be inferred from these facts, and the court committed no error in submitting the case to the jury.

3. ————: **Malpractice: Degree of Physician's Skill.** A physician or surgeon undertaking the treatment of a patient is required to possess and exercise that degree of skill and learning ordinarily possessed and exercised by the members of his profession in good standing, practicing in similar localities. It is not sufficient that he use the degree of skill possessed by reasonably skillful surgeons or physicians "in the community in which he is practicing."

4. ————: ————: **Degree of Specialist's Skill.** A physician holding himself out as having special knowledge and skill in the treatment of particular diseases, and sued as such, is bound to bring

Krinard v. Westerman.

to the discharge of his duty as such specialist, not merely the average skill possessed by general practitioners, but that special degree of skill and knowledge possessed by physicians who are specialists in the treatment of such diseases, in the light of the present state of scientific knowledge.

5. ———: ———: Measure of Damages: Future Operation. Where there is evidence that the needless cutting of one of the ureters causes the corresponding kidney to die, that about fifty per cent of dead kidneys produce infection, and that such infection makes necessary a major operation, accompanied with pain and is expensive, it is not error, in instructing the jury on the measure of damages, that they may take into consideration what suffering plaintiff may endure in the future for operations she may hereafter be required to have performed.

6. ———: ———: ———: ———: Use of Word "May." The instruction should limit defendant's liability for future pain to reasonable certainty and not bare possibility, and consequently the use of the word "may" is liable to mislead the jury; but courts. take an instruction as a whole, and if the word "may" as used with its context does not appear misleading, its use will not constitute reversible error.

7. ———: ———: ———: Surgeon's Fees. Evidence that plaintiff, as a result of her injuries, had paid definite sums of money and that she had stated accounts for other expenses incurred but not paid, is definite enough to support an instruction that the jury allow her the money she had expended for physicians, nurses and medicines, especially where the jury are definitely told that she had neither paid nor had a statement of the amount she owed other physicians and that those items were not included in the sum named as the aggregate of her expenses incurred.

Appeal from St. Louis City Circuit Court.—*Hon. William T. Jones*, Judge.

Affirmed.

*Watts, Gentry & Lee* for appellant.

(1) The court erred in overruling the demurrer to the evidence. There was no evidence offered from which the jury would have been justified in finding that the defendant negligently cut, punctured or tore the plaintiff's bladder, nor was there any evidence offered from which the jury would be justified in find-

ing that the defendant either cut or tied off one of plaintiff's ureters, or that he negligently failed to promptly repair the bladder. The most that could be said of plaintiff's evidence is that it tends to show that she suffered from conditions which might possibly have been brought about by the doing of one of the aforesaid negligent acts, but, at the same time, the plaintiff's evidence clearly showed that there were other causes, not in any way resulting from any negligence of the defendant, which could equally well have produced the conditions shown. Where an injury may have resulted from one of two or more causes, for some of which the defendant would be liable, and for other of which he would not be liable, the jury should not be allowed to speculate and guess that it came from defendant's negligence. Goransson v. Ritter Co., 186 Mo. 300; Kane v. Railroad, 251 Mo. 1; Caenefelt v. Bush, 198 Mo. App. 491; Crawford v. O'Shea, 145 Pac. (Wash.) 579; Ewing v. Goode, 78 Fed. 442; Coombs v. James, 144 Pac. (Wash.) 536; Merriman v. Hamilton, 103 Pac. (Ore.) 406. All a physician or surgeon is required to do is to possess and use such skill and judgment and use such care as a reasonably skillful man of his profession in his community would have and use, and mere error in judgment does not make him liable. Spain v. Burch, 169 Mo. App. 106; Vanhooser v. Berghoff, 90 Mo. 487; Gore v. Brockman, 138 Mo. App. 231; Granger v. Still, 187 Mo. 216; Martin v. Courtney, 75 Minn. 255; Staloch v. Holm, 100 Minn. 276. (2) Instruction 1, given at plaintiff's request, was erroneous because it permitted the jury to find the defendant guilty of negligence if he did not exercise the degree of care and skill exercised by physicians and surgeons anywhere in the world, whereas it should have been limited to the degree of skill and care exercised by physicians practicing in the same locality where the defendant resided. Vanhooser v. Berghoff, 90 Mo. 487; Cozine v. Moore, 141 N. W. (Iowa) 421. (3) The instruction on the measure of damages contains glaring

errors, clearly entitling the defendant to a new trial, even if the plaintiff was entitled to go to the jury. First, The jury were authorized by the instruction to allow compensation to plaintiff for her suffering—not only suffering resulting from operations which had been performed before the trial, but also for suffering that might result from operations that she "may hereafter be required to have performed." The evidence showed that there was nothing like a reasonable probability that an operation for the removal of plaintiff's left kidney— which was the only further operation under discussion— would have to be performed. A plaintiff may recover such damages—in a case like this—as are reasonably certain to accrue in the future, and may not recover for a bare possibility. Wilbur v. Railroad Co., 110 Mo. App. 698; Bigelow v. Railroad, 48 Mo. App. 367; Chilton v. St. Joseph, 143 Mo. 192; Batten v. Transit Co., 102 Mo. App. 285; Albin v. Railroad, 103 Mo. App. 308; Ballard v. Kansas City, 110 Mo. App. 391; Schwend v. Transit Co., 105 Mo. App. 534; Barr v. The City of Kansas, 121 Mo. 30; 2 Shear. & Red. on Neb. (4 Ed.), sec. 743. Sutherland on Damages (3 Ed.), sec. 123, and sec. 944, vol. 3; Joyce on Damages, sec. 244; Voorheis on Measure of Damages, sec. 46, p. 75; Watson on Damages for Personal Injuries, secs. 302, 303, p. 385. Second. The other glaring error in that instruction is that, in its second subdivision, it permits a recovery on account of expenses incurred for surgeons' fees, when there was not a particle of evidence offered tending to show the value of such surgeons' fees. Plaintiff expressly stated that she had not received any bill from Dr. Ernest, Dr. Caulk or the Mayos for their services. Dr. Judd testified that he did not know what his charges were without looking them up. He did not look them up. This portion of plaintiff's instruction on the measure of damages permitted recovery of an item as to which there was no evidence to show what damage the plaintiff had suffered on account

thereof.   To include such an item in an instruction on the measure of damages is universally held to be reversible error.   Morris v. Grand Ave. Ry. Co., 144 Mo. 500; Robertson v. Wabash Railroad, 152 Mo. 382; Moellman v. Lumber Co., 134 Mo. App. 485; Waldopfel v. Transit Co., 102 Mo. App. 529; Duke v. Railroad, 99 Mo. 347; Rhodes v. City of Nevada, 47 Mo. App. 499; Smith v. Railroad, 108 Mo. 251; Nixon v. Railroad, 141 Mo. 440; Davidson v. St. L. Transit Co., 211 Mo. 320; Gibler v. Ter. Assn., 203 Mo. 220.

*O'Neill Ryan* and *Gug A. Thompson* for respondent.

(1) (a) The case went to the jury on two (of the three) charges of negligence, to-wit, that defendant negligently cut, punctured, or tore the bladder, and that he negligently cut, or tied off, the ureter.   Under all the facts and circumstances in evidence the jury was justified in concluding that one or the other of these charges had been established, and, as a proximate result, that the plaintiff had sustained the grave injuries complained of and proved beyond any question. It was not a matter of mere speculation or conjecture.   The legitimate inferences from all the evidence warranted the deduction that there was the causal connection between one or the other of the acts of negligence charged and the injuries suffered.   Fetter v. Casualty Co., 174 Mo. 266; Lacsing v. Travelers Ins. Co., 169 Mo. 281; Kelly v. Railroad, 70 Mo. 607; Nevinger v. Haun, 197 Mo. App. 427; Fausette v. Grim, 193 Mo. App. 585; Coffey v. Tiffany, 192 Mo. App. 455.   (b) On a demurrer to the evidence the most favorable construction should be given of which it is capable in favor of plaintiff and every reasonable inference therefrom taken as true. Hall v. Coal Co., 269 Mo. 365; Stauffer v. Railway Co., 243 Mo. 316.   (c) Inferences of fact in favor of defendant cannot be allowed to overthrow inferences of fact in favor of plaintiff.   Maginnis v. Railroad, 268 Mo. 675.   (d) If men of reasonable intelligence would differ as to which of several causes, to be legitimately

inferred from the evidence, caused the damage complained of, the case should go to the jury.    Powers v. Transit Co., 202 Mo. 280;  Dakan v. Mercantile Co., 197 Mo. 258;  Hurlbut v. Railroad, 130 Mo. 667.  (e) If the evidence—the legitimate inferences or deductions therefrom—tends to prove that the injuries complained of "might, could or would" have followed the act of negligence charged, that question is one for the jury. De Mae v. Storage Co., 231 Mo. 619;  McDonald v. Railroad, 219 Mo. 477;  Sharp v. Railroad, 213 Mo. 578;  Glasgow v. Railroad, 191 Mo. 364;  Taylor v. Railroad, 185 Mo. 256.    (2) Instruction 1, telling the jury that in performing the operation it was the defendant's "duty" to exercise reasonable skill and care, that is, such skill and care as an ordinarily skillful and careful surgeon is accustomed to exercise and use in like surgical operations, under like circumstances," is proper. Ghere v. Zey, 128 Mo. App. 366;  Wheeler v. Bowles, 163 Mo. 407;  Vanhooser v. Berghoff, 90 Mo. 490;  Logan v. Field, 75 Mo. App. 600;  Robertson v. Wenger, 131 Mo. App. 224;  Logan v. Field, 192 Mo. 54.    (3) Appellant's first objection to instruction on the measure of damages is without merit.    Dean v. Railroad, 199 Mo. 395;  Sang v. St. Louis, 262 Mo. 454;  King ·v. St. Louis, 250 Mo. 510;  Whitworth v. Shurk, 197 Mo. App. 415;  Brown v. Barr, 184 Mo. App. 456;  Welborn v. Met. St. Ry. Co., 170 Mo. App. 351.    (4) Likewise, appellant's second objection to said instruction because of its reference to surgeons' fees is without merit. Because (a) defendant expressly waived at the trial the necessity that plaintiff state the amount of such fees she had paid, and (b) plaintiff, having incurred such expenses, was entitled to recover therefor, and if defendant desired to limit the recovery to a nominal amount he should have tested out his right to do so by asking an instruction to that effect.    State ex rel. v. Reynolds, 257 Mo. 19;  King v. St. Louis, 250 Mo. 514;  Sang v. St. Louis, 262 Mo. 454;  Carter v. Wabash Railroad Co., 193 Mo. App. 234;  Bell v.

United Rys. Co., 183 Mo. App. 345. "The court will not sacrifice the ends of justice upon the sharp edge of technicality." Sherwood v. Grand Avenue Ry. Co., 132 Mo. 345.

GRAVES, J.—Action for alleged malpractice. Defendant is a physician and surgeon in the City of St. Louis, and plaintiff is also a resident of said city.

By the petition it is alleged that plaintiff was troubled with a fibroid tumor of the uterus, and went to defendant for an operation for its removal. It is averred that defendant had represented to plaintiff that he was specially skilled in the performance of such operations, having performed 500 operations of like character. The charge of negligence is thus stated:

"That on the 13th of November, 1915, pursuant to said employment, the defendant performed said operation upon the plaintiff, but that he performed the same negligently, carelessly and unskillfully in this, to-wit: first, that he cut, punctured or tore a large hole in plaintiff's bladder; second, that he failed and neglected to mend the bladder at once; third, that, either during said operation or during one of the operations thereafter performed by him and hereinafter referred to, he so cut or tied off or so damaged plaintiff's left ureter as to cause it entirely to lose its functions and to atrophy and to cause plaintiff's left kidney also to lose its functions, to atrophy and become lifeless."

The petition then alleges two succeeding operations, as indictated above, and their failure, and further alleges that plaintiff had to undergo three other painful operations by other surgeons in an attempt to remedy the trouble occasioned by the alleged negligence of defendant. The petition thus closes:

"Plaintiff says that immediately because and by reason of defendant's negligence, carelessness and unskillfulness, aforesaid, her blader has been permanently injured and in part destroyed so that the urine flows constantly and unnaturally from her bladder. That her

left ureter and left kidney have been rendered useless and lifeless. That she has been compelled to undergo five serious and painful surgical operations since defendant's first operation upon her on November 13, 1915, and, as aforesaid, will be compelled to endure further operations. That she has suffered, still suffers and will continue throughout her life to suffer, most intense, excruciating and continuous mental and physical pain, anguish, torture and distress; that her nervous system has been wrecked; that she has been and will continue to be compelled to expend large sums of money for medicines, nurses, railroad fare, hotel, hospital and surgeons' fees. That she is permanently disabled, is an invalid and will continue to be an invalid the remainder of her life. That she has lost and will continue to lose the earning of her work and labor and will continue to suffer intense physical and mental pain.''

Then follows a prayer for damages in the sum of $25,000.

The answer admitted that defendant was regularly licensed and practicing physician and surgeon, and held himself out as such; the answer also admits that he performed the operation first mentioned by plaintiff for the removal of a fibroid tumor; admits that he cut the hole in plaintiff's bladder, but was not negligently done, but that it became necessary for him to make such cut in removing the tumor. The answer also admits the two subsequent operations for the purpose of closing the hole, but avers that they were unsuccessful for the reason that the parts were diseased. All other matters were denied.

The reply specifically placed in issue all new matter contained in the answer. Upon a trial before a jury the plaintiff obtained a verdict for $15,000, and from a judgment entered thereon the defendant has appealed.

The assignments of error made here cover the refusal of the court to sustain a demurrer to the evidence of plaintiff, and the giving of instructions 1, 2, 3 and 4, for plaintiff.

The further facts can be best detailed in connection with the several assignments of error.

I. The first assignment of error is the failure of the trial court to sustain defendant's demurrer to the evidence. This goes to the sufficiency of the facts. It should be stated at the outset, that, although the defendant's professional conduct was on trial and in the balance, he did not testify himself, nor did he offer other testimony in his behalf. The case went to the jury on the evidence adduced for plaintiff. Dr. Mansfield and two nurses, and other parties, were present at the operation.

*Inference From Facts.*

The case was submitted to the jury upon two of the alleged negligent acts, i. e. (1) the negligent cutting of the bladder, and (2) the negligent cutting or tying off of the ureter. Were there facts showing negligence as to either of these? Plaintiff in her instructions having abandoned the other charge of negligence, it is not here for review.

It stands admitted that defendant did cut a hole in plaintiff's bladder. Plaintiff says he negligently did it, and defendant says that he purposely did it, because the degenerated condition required it to be done. Negligence may be inferred from the facts. If the legitimate inferences which may be drawn from the facts established negligence, the case of negligence is made. Now for the facts, as to whether or not this hole in the bladder was intentionally and necessarily made, or negligently made.

At the solicitation of the plaintiff a Mrs. O. D. Rizer was in the operating room during the whole time of the operation. She was plaintiff's friend. Mrs. Rizer testifies that after the operation the defendant showed her the parts which had been removed. That she asked him if the operation was a success, and he replied: "That is a perfect operation, perfectly successful." Not a word was said about cutting the bladder at that time. Nor did the defendant tell the plaintiff

about it for a long time thereafter, and then only when plaintiff complained about the constant flow of urine, and told him that she believed that he had injured her bladder. This was a month after the operation, and then for the first time the defendant said that he had cut the bladder, and taken out the diseased portion, and there would have to be a second operation. During all this month he was telling plaintiff and her friends that plaintiff was getting along nicely.

In addition to these facts, when the necessity arose for the third operation, and plaintiff wanted that eminent physician, Dr. Mudd, called in to assist, the defendant became enraged and mad, and used some rather forceful language, with the result that the third operation was performed without the presence of Dr. Mudd. The very conduct of the defendant tended to show his guilt. But this is not all. Plaintiff was examined both before and after these operations by different physicians. None of these found any evidence of a cancerous or diseased condition. The fact is that, as shown by the experts, a cut of this kind is hard to cure, and it took three operations at Mayo's Hospital to get the cut closed. But the surgeons there found no diseased or cancerous condition. The experts further say that if it had been cancerous, the condition would return, notwithstanding the cut. In our judgment the evidence justified the submission of this ground of negligence.

Now as to whether the evidence tended to show that defendant negligently cut or tied the left ureter. The left ureter connects the left kidney with the bladder. Upon this ground of negligence, the evidence shows that the cutting or tying of the ureter would kill the kidney. The evidence further tended to show that this woman had been normal in all these parts, but that now there was a left kidney, but no life in it. Before the operation plaintiff had not been bothered with kidney troubles. A fair inference from these facts would indicate that defendant had destroyed this left uterer in

279 Mo. Sup. 44.

one of his operations. The operation he attempted to perform was a delicate one, and required skill. He proved not to be equal to the task.

We think the court committed no error in submitting the case to the jury by the overruling of the defendant's demurrer.

What is said above also disposes of appellant's third and fourth assignments of error. These assignments simply go to the effect that the court erred in giving instructions two and three for the plaintiff, because there was no sufficient evidence upon which to base them. The instructions are not otherwise criticized. Upon the demurrer, supra, we have held that there was evidence upon which each of these instructions could be predicated. These assignments of error must likewise fall.

II. It is next urged that there was error in giving plaintiff's instruction number 1. This instruction reads:

"The court instructs the jury that it is admitted that defendant as a surgeon undertook, on November 13, 1915, to operate on the plaintiff and remove a fibroid tumor and remove the uterus, and the court instructs you that in performing this operation it became and was his duty to exercise reasonable skill and care as an ordinarilly skillful and careful surgeon is accustomed to exercise and use in like surgical operations under like circumstances."

Skill.

The contention is that the instruction fixed the wrong standard of efficiency, in this, that the instruction covered the whole world's physicians, whilst the defendant's efficiency should have been guaged by "the degree of skill possessed by reasonably skillful surgeons *in the community in which he is practicing.*" We are cited to Vanhooser v. Berghoff, 90 Mo. 487, but that case does not cover the fine distinction urged by distinguished counsel in this case. On the other hand in that case, the opinion at pages 490-491, does say: "Under the law his contract is not one of warranty that a cure will

be effected, but only that he possesses and will use reasonable skill, judgment and diligence, such as is ordinarily possessed and employed by members of the same profession."

Other cases (from other jurisdictions) cited by appellant do not discuss the doctrine contended for here at all. Why they should have been cited we do not understand. We find but three cases authorizing the doctrine contended for by appellant.

This doctrine limits the skill of the operating surgeon to that degree of skill possessed by reasonably skillful surgeons *"in the community in which he is practicing."* The cases we find are Nelson v. Harrington, 72 Wis. 1. c. 597; Wurdermann v. Barnes, 92 Wis. 1. c. 208, and Pike v. Honsinger, 155 N. Y. 201.

So far as we find the only other limit along the line contended for by appellant, is the rulings which limit the skill of the operating surgeon to that of reasonably skillful surgeons in similar communities. [22 Am. & Eng. Ency. Law (2 Ed.), p. 800.] This annotator says:

"The skill and care of physicians in the particular locality or neighborhood is not the standard, but that ordinarily possessed by physicians practicing in similar localities. [Gramm v. Boener, 56 Ind. 497; Whitesell v. Hill, 101 Iowa, 629; Pelky v. Palmer, 109 Mich. 561; McCracken v. Smathers, 122 N. C. 799.]"

Besides the cases cited by the writer of the above, as announcing the same doctrine, there might be added the fóllowing: Hawthorn v. Richmond, 48 Vt. 1. c. 559; Small v. Howard, 128 Mass. 1. c. 132 and 136; Dunbauld v. Thompson, 109 Iowa, 199; Dorris v. Warford, 9 L. R. A. (N. S.) p. 1090; Kelsey v. Hay, 84 Ind. 1. c. 193; Reeves v. Lutz, 179 Mo. App. 1. c. 64; Hales v. Raines, 146 Mo. App. 1. c. 241.

Some of these cases urge as a reason for the rule that the operating surgeon or physician might have in his immediate vicinity only quacks, and his skill would be measured by theirs. Hence they say that he must

possess the skill of the reasonably skillful surgeon in similar communities. This rule appears to be more reasonable than the one contended for by appellant in this case.

On the other hand, in Wheeler v. Bowles, 163 Mo. l. c. 406, we have a very similar instruction to the one given in the instant case, and it met with the approval of this court, when at page 410, we said: "Indeed, we may remark that we have rarely found a fairer set of instructions in a negligence case. Surely defendant has no right to complain of them."

In the very early case of West v. Martin, 31 Mo. 375, we find that this court approved of an instruction for the plaintiff which contained this language: "then he was bound by the law to use the ordinary skill of his profession in the treatment of said case." The defendant had been called to treat a broken thigh for the plaintiff. To see just what we did approve, I sent for the old files in the case. So that we have made the test "the ordinary skill of his profession" in that case. The approved instruction in the Wheeler case, supra, contains this clause: "or failed to exercise such care and skill, as is used by the average members of his profession under like conditions and circumstances." It is not far from the rule in West's case. In one it is the "ordinary skill of his profession," and in the other, "such care and skill as is used by the average members of his profession." There is also added in the last case the phrase "under like conditions and circumstances." These words, we take it, do not change the situation materially. In Longan v. Weltmer, 180 Mo. l. c. 328, where the instruction fixed the required skill as "ordinary care and skill," the instruction passed muster here and the plaintiffs' judgment was affirmed.

So far as we can find, up to the Longan case, supra, this court had never fixed any qualifications to what was said in the West and Wheeler cases, supra, but in Grainger v. Still, 187 Mo. l. c. 213, MARSHALL, J., quoted,

with approval, the following from 22 Am. & Eng. Ency. Law (2 Ed.), p. 799:

"The standard by which the degree of care, skill, and diligence required of physicians and surgeons is to be determined is not the highest order of qualification obtainable, but is the care, skill, and diligence which are ordinarily possessed by the average of the members of the profession in good standing in similar localities, regard being also had to the state of medical science at the time."

The Springfield and St. Louis Courts of Appeals have followed this rule to the extent of including the phrase "in similar localities." Save and except what we find in the Grainger case, supra, this court has never adopted this particular phrase, although it is approved by several courts as indicated above. In 30 Cyc. 1570, the measure of skill required is thus stated:

"A physician or surgeon undertaking the treatment of a patient is not required to exercise the highest degree of skill possible. He is only required to possess and exercise that degree of skill and learning ordinarily possessed and exercised by the members of his profession in good standing, practising in similar localities, and it is his duty to use reasonable care and diligence in the exercise of his skill and the application of his learning, and to act according to his best judgment."

From it all, we can safely say that the contention made by appellant's learned counsel cannot be sustained. There should be no limiting to the local vicinity of the practitioner. The weight of authority is against that doctrine.

The instruction criticized is a good one under the West and Wheeler cases, supra. In the Wheeler case the skill required is: "such care and skill as is used by the average members of his profession under like conditions and circumstances." It is likewise good under the Longan case, supra. But the point was not specially at issue in either of those three cases. It

was not urged, as here. Nor was this point an issue in Grainger's case, supra. On the whole, we are disposed to adopt the rule as given in 30 Cyc., supra, which seems to have caught the judgment of our courts of appeals.

By this we do not mean to criticise the instruction in the Wheeler case, supra. The phrase "under like conditions and circumstances" is broad enough to cover "in similar communities." [Ghere v. Zey, 128 Mo. App. 1. c. 366.] So that the instruction in the instant case is correct.

But even though the instruction was technically wrong this does not avail the defendant in this case. The plaintiff sued the defendant as a specialist in this line of operations. Her petition so avers, and her evidence so shows. The rule applicable to defendants' case is stated thus in 30 Cyc. at page 1571:

"A physician holding himself out as having special knowledge and skill in the treatment of particular diseases is bound to bring to the discharge of his duty to a patient employing him as such specialist, not merely the average degree of skill possessed by general practitioners, but that special degree of skill and knowledge possessed by physicians who are specialists in the treatment of such disease, in the light of the present state of scientific knowledge."

The instruction complained of imposed a lesser degree of skill than was required of him as a specialist in this class of operations. The petition avers: "That he represented to the plaintiff that he was specially skilled in the performance of such operations, having performed five hundred such operations."

The proof accorded with the averment of the petition. Having been given an instruction requiring a lesser degree of skill, the defendant is in no position to complain.

III. A more serious question is raised on the instruction as to the measure of damages. This instruction (in material parts) reads:

"If you find for plaintiff under the other instructions given because of the hole cut, punctured or torn in the bladder (if you find that said bladder was so cut, punctured or torn), and the loss of the left ureter and left kidney (if you find that ureter and kidney were lost), or because of either, then you will assess the damages as follows:

Future Operations.

"First. In such sum as you find will be reasonable compensation to her for the mental and physical pain and suffering you find she has endured, if any, and that you believe she will in the future endure, if any, as a result thereof, including what suffering she endured, if any, *or may endure in the future,* if any, in necessary operations she has had performed, *or may hereafter be required to have performed,* as a result of the negligence of the defendant (if you find he was negligent under the other instructions given), and including any permanent impairment or disability, if any, to plaintiff that you may believe will follow, and directly caused thereby.

"Second. In such sum as you find from the evidence will compensate plaintiff for money, if any, she has reasonably and necessarily expended, or expenses, if any, she has reasonably and necessarily incurred for medicines, nurses, railroad fares, hotel, hospitals, *and surgeons' fees* in endeavoring to remedy her physical condition which you find resulted from the negligence of the defendant (if you find he was negligent under the other instructions given you), if you find defendant liable under the other instructions given."

The italicized portions are the portions criticized. Of these in order. A clear statement of the rule is made by BLACK, P. J. (who always expressed his ideas clearly), in Barr v. City of Kansas, 121 Mo. l. c. 30. Judge BLACK said:

"The plaintiff, in these personal injury cases, may recover damages suffered up to the date of the verdict, and also such damages as will be suffered in the future, but no allowance for future damages should be made,

except for such as it is reasonably certain will result from the original injury. [2 Shear. & Red. on Neg. (4 Ed.) sec. 743.] The question whether future damages will, with reasonable certainty, flow from the injury is one for the jury. But it does not follow that the witness must be interrogated in language which would be proper and appropriate in an instruction. The object of the examination is to get the opinions of persons competent to express an opinion on the subject, and the different shades of opinion which the physicians may entertain, leaving it to the jury to say whether future damages are reasonably certain. Here there was evidence that the plaintiff received severe and permanent injuries to the spine and womb. In such cases the most that any physicians can say as to the effect of the injuries on the life of the injured person, however experienced or learned in his profession, is to give his opinion as to the probable consequences. An opinion being expressed, it becomes a proper subject for cross-examination, and in the end it is for the jury to determine the question as to the degree of certainty.''

The reasonable certainty of future sufferings must be determined by the jury, is the rule here announced. Of course if there is no evidence upon which to submit this question to this jury, it should not have been submitted. So in this case the real matter for consideration is as to whether or not there was sufficient evidence to submit the question of future sufferings, and the question of future sufferings from a future operation. As to future sufferings from what had been done, up to the date of trial there is no question. There was sufficient evidence for the submission of that matter. But it is urged that the evidence was insufficient upon the proposition of there being a reasonable certainty of a future operation, to include the future sufferings upon the occurrence of that operation. Upon this question counsel for appellant quotes from one doctor, but omits a part of his testimony. He also omits material testimony of another. The future operation

referred to in the instruction was the one for the removal of the dead kidney. As to this Dr. Caulk, among other things, said:

"Q. What might result from the present condition of that left kidney? A. Infection.

"Q. And if infection should result would it be necessary that she have an operation to have the kidney removed from the body? A. Chances are she would."

Upon the same question Dr. Judd, among other things, said:

"Q. The connection between the kidney and the bladder is called the ureter? A. Ureter; yes, sir.

"Q. If that connection is in any way destroyed, what is the result upon the kidney? A. The kidney dies.

"Q. It loses its function? A. Yes.

"Q. Is it necessary to have it removed if it is dead? A. Not necessarily.

"Q. A patient may live with a dead kidney? A. Yes, sir.

"Q. Would it be advisable to have it removed? A. Not unless it was making trouble.

"Q. Would it be liable to make trouble? A. I presume about fifty per cent of the dead kidneys make trouble.

"Q. That requires an operation? A. Yes, sir.

"Q. It is what you call a major operation, is it not? A. Yes, sir.

"Q. That would entail expense and pain and discomfort and all that to the patient?"

This evidence sufficed to allow the question to be submitted to the jury. For aught we know the jury may have made no award to plaintiff upon these matters. If there was sufficient evidence upon which to submit the matters, then it was a question for the jury. We rule that there was sufficient evidence.

But appellant urges that although there might be evidence upon which to submit to the jury the question of the "reasonable certainty" of the future operation

and suffering consequent thereupon, yet this instruction as to "future sufferings" uses the word "may" throughout. Our courts have continuously criticism the use of this word, but have never made the criticism so strong as to base a revversal thereon. [See Reynolds v. Transit Co., 189 Mo. 1. c. 421; Dean v. Railroad, 199 Mo. 1. c. 395, and cases cited.] Personally I have thought these criticisms just. [Garard v. Coal & Coke Co., 207 Mo. 1. c. 257.]

The trouble with the use of the word "may" in such connections is that the jury might give to it the meaning of "bare possibility" instead of "reasonably certain." But this court has never reversed for the use of that word. Instructions as to future sufferings and damages should, in some appropriate way carry the idea "reasonable certainty." However, we have usually taken the whole instruction, and if the word "may" as used in the context does not appear positively misleading, we have said that it was harmless.

The present instruction says: "In such sum as you find will be reasonable compensation to her for the mental and physical pain and suffering you find she has endured, if any, and that you believe she *will in the future* endure, if any, as a result thereof." Note the use of the word "will" as to future pain and sufferings. So that when the whole instruction is read, we do not feel that we should reverse the case on account thereof, in view of our previous rulings.

It is next insisted that the inclusion of the phrase "and surgeons' fees" in the second paragraph of the instruction was error. Appellant urges that this refers to the fees at Mayo's Sanitarium, Rochester, Minn., and that there was no evidence as to their value. It is true that there is no evidence as to the value of these services. It was openly stated by plaintiff that she had not paid for the operations at Mayo's and had not received their bills therefor. She also stated that she had not paid Dr. Ernst for the X-ray picture, nor Dr. Caulk for his services. The plaintiff had a list of items

that she had paid, and receipts for most payments, as is indicated by the evidence. After she spoke of the doctors whose bills she did not have, she gave the following testimony:

"Q. Leaving out the bill of the Mayos and leaving out the bill of Dr. Caulk, which you say you have not received, and Dr. Ernst—that is for the X-ray? A. Yes, sir.

"Q. Just leaving those aside, tell the jury what your other items of expense were? A. Well, besides the Mayos bill—

"Q. Well, just leave the Mayos bill out of consideration, and leave Dr. Caulk's and Dr. Ernst's bills out. A. Well, these others are $1690.

"Q. Well, give the items there, Miss Krinard? Mr. Gentry wants you to give the items of that. A. Well, I am afraid I haven't those, Mr. Thompson.

"Q. Have you the items? A. I have not. These are all the receipts and these are things I have no receipts for. You see, I have no receipt for that (indicating papers). No, Mr. Thompson, I haven't those here.

"Q. Well, you have down here 'Drugs—prescriptions, $25.50.' A. That is just what is on that paper; I have no receipt for, you understand.

"Q. And you have 'Incidentals.' What do you mean by that? A. Those are expenses that came up during my illness that my people paid, don't you know.

"Q. You have that as $75? A. Yes.

Q. Well, can't you tell us what that is any more definitely than that? A. Well, it is very hard to say. They got me everything for my comfort. I had to buy cotton, I don't know how many dollars' worth of cotton that it was. I had fifteen or twenty dollars' worth of cotton. And besides I had to buy urinal vessels and many, many things that were necessary.

"Q. You have here, 'Nursing $90.' What was that for? A. I brought that in for this reason: My sister who waited upon me was losing her time at the

office. Her time was worth twice more than that. She stayed with me, the only sister I had with me at the time that waited on me, and she did the nursing, saved a nurse, and so I put down $90 for nursing.

"Q. Over what period of time was that? A. For the four months.

"Q. 'Transportation, board and room at Rochester $374.95.' Is that correct? A. Yes, that is correct.

"Q. By 'transportation' you mean your railroad ticket? A. Yes. I kept track of every cent to have it just right.

"Q. 'St. Mary's Hospital.' What hospital is that? A. That is the hospital at Rochester.

"Q. '$66.' Is that what you paid them? A. Yes, sir, three weeks' board.

"Q. And you have here, 'Use of operating room $5. What was that? A. That was when I was taken there for one of the operations—the second operation—I was taken to the operating room.

"Q. That is just for that one operation? A. Yes, sir, just for that one operation.

"Mr. Gentry: "I don't believe I heard the details of that examination and I will waive further details of it. Just let her go on with her statement of the total amount she paid.

"Witness: Well, everything is there.

"Mr. Thompson: Q. You have kept an accurate account of your expenses? A. Yes, sir. I have receipts for all the others, but I simply put those down. Here are the receipts to show for everything except those, I haven't the receipts for those."

It clearly appears, from other testimony that Dr. Bartlett examined the plaintiff and Dr. Raines treated her, after defendant's operations, and before she went to Mayos' Sanitarium. She said that she had paid all her expenses, except Ernst, Caulk and Mayos. She had the items before her, and was being questioned in detail about each, when counsel for defendant waived the details and asked that she state it in a lump sum, which

she did as $1690.  In these items were at least two phy-
sicians and surgeons—Rains and Barlett.  This was
sufficient to justify the inclusion of the phrase objected
to by defendant now.

In addition to this, it is clear that the counsel for
the plaintiff made it clear to the jury that the bills
of Ernst, Caulk and Mayos were not to be considered.
The specific statement in the record makes it clear that
no jury would consider those items, when plaintiff had
been directed to omit them, because she did not have
them.

On the whole this portion of the instruction is good,
under the evidence.  From it all, it follows that the
judgment should be affirmed, and it is so ordered.  All
concur.