TOMMY RAY HENRY, A MINOR, BY HARRY ALBERT HENRY, GUARDIAN, RESPONDENT, v. THE FIRST NATIONAL BANK OF KANSAS CITY, A CORPORATION, APPELLANT.—115 S. W. (2d) 121.

Kansas City Court of Appeals. March 7, 1938

1074

*Leon Greenebaum* and *O'Hern & O'Hern* for respondent.

*Henry S. Conrad, L. E. Durham, Hale Houts* and *Wright Conrad* for appellant.

REYNOLDS, J.—From a judgment of $2,750 for personal injuries rendered against it in the circuit court of Jackson county, Missouri, in favor of the plaintiff, the defendant, after unsuccessful motions for new trial and in arrest of judgment, appeals.

The plaintiff, a minor, by his father as guardian, filed his petition in such court on December 28, 1935, and thereafter filed an amended petition, upon which the cause, with the defendant's answer thereto, was tried before the court with a jury at its regular May term, 1936, resulting in the judgment above mentioned, appealed from.

The plaintiff was injured on February 17, 1935, by having his right leg severely burned when his clothing caught fire from an open trash fire about which he was playing. He was four years old at the time.

The fire was in a yard or open space near the northwest corner of Van Brunt and Seventh Street, in Kansas City, Missouri, at the rear of and adjacent to a small apartment building fronting east on Van Brunt, known as 638-640 South Van Brunt, and four houses fronting south on Seventh Street. The property, including the yard, was under one ownership, an oblong tract of ground with a frontage of about 120 feet on Seventh Street and 138 feet on Van Brunt. It was part of a trust estate created by one L. Fred Evans with the defendant, The First National Bank, as trustee.

The defendant, at the time in question, as such trustee, was looking after and renting the apartments in the apartment building and the houses. The plaintiff's family was a tenant of the third house west of Van Brunt. The trash fire had been set out by one of the tenants in the apartment building, William Brislin, upon his own initiative and not, so far as the record shows, upon any direction from or permission of the defendant. The fire was back of the apartment, about ten feet from an elm tree.

At the time the plaintiff was burned, the fire was smoldering or, at least, had burned down considerably. The plaintiff, according to other witnesses present, was standing in the edge of the embers, reaching for a piece of bread that was in the fire, when the right leg of his trousers or overalls caught on fire. Mr. Brislin, who had left prior to that time, testified that the fire was "practically" out when he left it.

The plaintiff, when his clothes caught fire, ran screaming toward his home. The first grown· person to get on the scene was Mrs.

Carter, who was attracted by the screaming of her daughter Helen, who was in the yard with the plaintiff. She ran, meeting the plaintiff, gathered him in her arms, and beat out the flames with her hands. The plaintiff's father came immediately, and the boy was wrapped in a coat and taken at once to Mercy Hospital.

The plaintiff was kept and treated at the hospital for some eight months. Skin obtained from above the knees of both legs was grafted upon the burned area, leaving graft scars above the knees and forming a grafted skin covering over the burned area, which extended from the knee toward the ankle on the outside of the right leg. The plaintiff was seriously and permanently injured.

He was able to start to kindergarten in January, 1936, at the beginning of the second semester. His wounds, at such time, had healed. His parents testified that he limped some when he became tired but that otherwise he was not troubled in the use of his leg; and the mother testified that the leg had become stronger and the limp had lessened or disappeared. The plaintiff's medical witness said that the development of the injured leg would depend upon the extent to which the boy used it, and expressed the opinion that the strength of the leg might possibly be impaired "for certain effort." The defendant's medical witness testified that the burned leg was smaller than the other leg due to the destruction of some fatty tissue but that there had been no impairment of the muscle; that he detected no difference in the strength of the two legs and there appeared to be no pain in the leg and no limitation of motion; and that the thinness of the grafted skin would make the leg more sensitive to cold or extreme heat but that the use of the leg would not be impaired.

The plaintiff pleaded in his amended petition and introduced in evidence an ordinance prohibiting any person from burning any trash, papers, or other combustible material within the city limits of Kansas City unless the same was "securely confined in a refuse burner constructed of brick, plate iron, steel or wire with all openings in said burner securely covered by a cover of screen wire" and an ordinance providing: "The owner of every tenement house shall provide for said tenement house, keep clean and in place, proper covered receptacles of non-absorbent material for holding garbage, refuse, ashes, trash, and other waste matter. Garbage chutes are prohibited. Incinerators are allowed."

The plaintiff's amended petition charges that the yard in which the trash was burned was open and was maintained by the defendant for the common use of all of the tenants in the apartment building fronting on Van Brunt and in the four detached houses fronting on Seventh Street and that the defendant owed the duty to maintain the yard in reasonably safe condition for the benefit of all the tenants and their children.

 

At the time in question and subsequent to January, 1934, the defendant looked after the property through a Mr. Roy Moore, an employee in charge of rentals in the defendant's trust department. Mr. Moore, in turn, had arranged with Mrs. Stivers, a tenant of one of the apartments, to assist in the management of the property and in the renting of the same and in the collection of the rentals up until November, 1934. During the period Mrs. Stivers assisted him, Mr. Moore made regular monthly visits to the property to take up the rents collected by her. In November, Mrs. Stivers moved away; and, thereafter, Mr. Moore was the only person regularly employed and paid by the bank who collected rents and looked after the property, until some time after the plaintiff was injured when he made arrangements with Mrs. Allen to assist him as local manager of the premises.

The yard in which the trash fire occurred was open, without fences or divisions. There is evidence that the tenants of the houses, including the plaintiff's family, were told by Mrs. Stivers, while she was there, that the yard was open for the common use; that the children of the tenants, some sixteen in number, used it as a playground; and that the tenants stretched their clotheslines across it and hung out their washings.

It appears from the evidence that Mrs. Stivers, during the time she assisted Mr. Moore, provided a large, empty, metal, oil barrel or drum with one end knocked out, which she kept in the yard about ten feet from the elm tree and in the rear of the apartment for the use of the various tenants, both of the apartment and of the houses, in burning their trash. When she moved away in November, 1934, she took the drum or barrel with her; and, from that time until the time of the injury to the plaintiff, on February 17, 1935, there was no regular trash burner provided by the defendant or its agents in charge of the property. It appears from the evidence that the houses and apartments as well were heated by stoves and that most of the tenants during the cold weather, when the stoves were in use, burned their papers and trash in their stoves. There is evidence, however, that, after Mrs. Stivers left and took away the oil barrel or drum which she had provided, some of the tenants, from time to time, burned trash out in the open, without any container, at a point near where Mrs. Stivers had kept the oil barrel or drum. At this point, there was a charred area, the result of the fires. From the testimony of some witnesses, trash was burned by some of the tenants frequently—once, twice, and three times a week—and by some oftener. Mr. Brislin, the tenant in the apartment house who set out the trash fire by which the plaintiff was burned, and Mrs. Brislin testified that they had been burning trash in the yard about once a week, usually on Sundays (as on the day in question), when

the weather permitted, but that customarily they had been burning their trash in their stove during the winter months.

Mr. Henry, the plaintiff's father, testified that, after Mrs. Stivers left, he told Mr. Moore there should be a trash burner in the yard because it was dangerous to burn papers on the bare ground because of the children playing in the yard; that Mr. Moore asked the plaintiff's father if he knew where he could get a trash burner and that he replied that he did; and that Mr. Moore asked him to get one but the plaintiff's father replied that he did not have any money, to which Mr. Moore answered, "All right, we will see about it then." There is no evidence of any subsequent conversation by Mr. Moore with the plaintiff's father or any one else in respect to the matter, and no trash burner seems to have been provided.

The evidence is to the effect that the plaintiff was burned about four o'clock in the afternoon on the day in question and that Mr. Moore was there on that same afternoon from about three-thirty o'clock until after the plaintiff's injury, going from one building to another, calling upon the various tenants.

The amended petition is voluminous and embraces twenty-six pages of the record. We shall not undertake to analyze or set it out in detail. It would be almost an impossible task to do so succinctly and satisfactorily. It is not a model under the provisions of Section 764, Revised Statutes of 1929. Suffice it to say, however, that, in a general way, it seeks to fasten liability on the defendant for the plaintiff's injuries at the hands of Brislin by reason of the defendant's alleged negligent violation of duty in failing to use ordinary care to keep the premises on which the plaintiff was injured in a reasonably safe condition for use as a playground by the plaintiff and in negligently failing to use ordinary care to prevent third persons from subjecting said playground to a use rendering it unsafe and dangerous to the plaintiff when using it and in violating and negligently failing to comply with Sections 61-64, Article 1, Chapter 2, Revised Ordinances of the city of Kansas City, Missouri, of the Revision of 1928, relating to the care of inflammable rubbish, waste paper, and other articles by the owners and occupants of the buildings within the city and to the burning of trash, paper, or combustible materials within the city, unless confined in a refuse burner covered with screen wire, and with provisions of Sections 32-2 and 32-38 of Article 32, Ordinance 54234, which are as follows:

"Section 32-2-1. A tenant house is any house or building, or portion thereof, which is either rented or leased, to be occupied, in whole or in part, as the home or residence of three or more families living independently of each other, and having a common right in yards, porches, hallways and stairways, and includes apartment houses, flat houses and all other houses so occupied."

"SECTIONS 32-38. RECEPTACLES FOR ASHES, GARBAGE AND TRASH. The owner of every tenant house shall provide for said tenant house keep clean and in place, proper covered receptacles of non-absorbent material for holding garbage, refuse, ashes, trash, and other waste material. Garbage chutes are prohibited. Incinerators are allowed."

After making formal allegations, it, among other matters, alleges the plaintiff's injuries; the ownership and possession by the defendant of the playground upon which the plaintiff was injured; the retention of the possession of such playground and the control thereof by the defendant for the common use and enjoyment of its various tenants in the apartment and tenant houses and other buildings in the block (in connection with which it was used as a playground for the children of such tenants, including the plaintiff); the occupancy, as the tenant of the defendant, of one of said buildings by the father of the plaintiff, together with members of his family, including the plaintiff; and the alleged negligence of the defendant in the particulars noted.

The answer is a general denial.

At the close of the plaintiff's evidence and again at the close of all of the evidence, the defendant requested the court to give instructions directing a verdict for the defendant, which in both instances, were refused.

It is conceded by the defendant in its brief that there is evidence tending to show that the yard in which the fire occurred was reserved for and devoted to the common use of the several tenants, including the family of the plaintiff. It is further conceded by the defendant in its brief that an owner of premises renting parts to different tenants and reserving parts for the common use of such tenants owes a duty to maintain such commonly used premises in a reasonably safe condition for use.

## OPINION.

1. The first point made by the defendant is that the court erred in refusing to direct a verdict for the defendant at the close of all of the evidence, basing such point upon the contention that the unlawful and negligent burning of trash in the open by the defendant's tenant Brislin, and not the alleged negligence of the defendant, was the proximate cause of the plaintiff's injury.

The grounds of negligence selected to be relied upon by the plaintiff were submitted by his principal instruction and are as follows:

"—that defendant knew, or by the exercise of ordinary care, could have known of said tenants' said habit or practice (if any) in time thereafter and prior to February 17, 1935, by the exercise of ordinary care to have abated and stopped the making of such fires or caused the same to be abated and stopped or to have arranged to have such waste paper, trash and other inflammable and combustible

waste materials (if any) burned elsewhere than in said yard, or to have provided a trash burner in said yard or elsewhere, in which burner said tenants could, with reasonable safety to plaintiff while playing in said yard, have burned and should have been by defendant required to burn their said waste paper, trash and other waste materials, or to have so restricted or regulated the use of said yard or the making of fires therein as reasonably to have protected and guarded plaintiff while using or playing in said yard from and against injury or harm from such fires (if any), and thus to have prevented harm or injury to plaintiff therefrom, and that defendant carelessly and negligently failed and omitted so to do.''

2. In determining whether the defendant was entitled to a directed verdict, grounds for recovery not submitted by the plaintiff will not be considered, it being deemed that the plaintiff waived all other grounds set up in the petition than those submitted. [Bode v. Wells, 322 Mo. 386, l. c. 396, 15 S. W. (2d) 335; Phillips v. East St. Louis & S. R. Co. (Mo.), 226 S. W. 863, l. c. 865; Krinard v. Westerman, 279 Mo. 680, l. c. 688, 216 S. W. 938.]

3. It is conceded by the defendant in its brief that an owner of premises renting parts thereof to different tenants and reserving parts for the common use of such tenants owes a duty to maintain such commonly used premises in a reasonably safe condition for use by those entitled to use the same and lawfully thereon. The proposition may be accepted as true. [Bender v. Weber, 250 Mo. 551, l. c. 563, 157 S. W. 570; Morelock v. DeGraw, not yet published.]

The owner is bound to use ordinary and reasonable care to discharge that duty and in default thereof becomes liable to any one lawfully using such premises reserved for common use for any injury occasioned by reason of dangerous and unsafe obstructions therein or on, whether placed therein or on by himself or another person where he knew, or with the exercise of ordinary care could have known, of such obstruction by such other person in time to have removed such obstruction before the injury complained of. [Morelock v. DeGraw, *supra.*]

Ordinarily, it is true that a landlord is answerable for injuries resulting from his own negligence and not for injuries resulting from the negligent acts of others. [Gilliland v. Chicago & Alton Ry. Co., 19 Mo. App. 411; Mancuso v. Kansas City, 74 Mo. App. 138; Ward v. Fagin, 101 Mo. 669, 14 S. W. 738; Eyer v. Jordan, 111 Mo. App. 424, 19 S. W. 1095; Mayer v. Schrumpf, 111 Mo. App. 54, 85 S. W. 915.]

He is not ordinarily liable for obstructions arising from natural causes or from the acts of other persons which do not in themselves constitute defects in the premises themselves. It has been held that he is not required to police the premises to prevent obstructions by

tenants or other persons or to prevent negligent or malicious persons not under his control from putting the same in an unsafe condition; but, if he knows or could have known of such obstructions or conditions by third persons, he must use due diligence to remove such obstructions. [Greenburg v. Man, 119 N. Y. S. 244.]

A fire set out upon the premises is an obstruction to its ordinary use by those entitled to use and enjoy it as a place of recreation or as a playground or for other ordinary purposes, such as may render it an unsafe place for such purposes, the same as a defect in the premises would render it unsafe.

4. The theory of the plaintiff's petition is based upon the alleged negligence of the defendant in the breach of its duty in failing to use ordinary care to protect the premises in question from being subjected to a use by any one in a manner from which it might be reasonably anticipated that injury through negligence would follow. The defendant is charged with knowledge of the custom and practice upon the part of its various tenants of repeatedly setting out open and unprotected fires on the premises in question for the purpose of burning trash, waste paper, and other waste materials and with failing to abate and prohibit such custom and practice and with permitting it in such a manner as to have negligently violated its conceded duty to use ordinary and reasonable care to keep the premises in a reasonably safe condition for the enjoyment of its tenants and the members of their families entitled to use the same.

The evidence shows that the defendant failed to provide and place upon the premises the ordinary receptacles as required by ordinance for holding refuse, trash, or other waste matter accumulating on the premises, in which the tenants might have placed such refuse and other waste matter, and failed to furnish refuse or trash burners for the use of the tenants in which they might have burned the same. It shows the repeated and frequent acts of the tenants in setting out on the premises such open and unprotected fires in violation of the ordinance of the city for a sufficient period of time for the defendant to have known, by the exercise of ordinary care, of such practice on their part to have abated and stopped such practice long before the plaintiff's injury. It was the duty of the defendant to have used ordinary care to have stopped such practice. That it did not do so fully appears from the facts in the record.

This case is not one where the fire which caused the injury was the only one set out, as in the case of Excelsior Products Manufacturing Co. v. Kansas City Southern Railway Company, 263 Mo. 142, 172 S. W. 359, cited by the defendant in its brief; and that case therefore has no application. That the fire in question, which caused the plaintiff's injury, was likely to be set out, following the practice of the tenants to set out such fires, and that injury might follow there-

from were matters to be reasonably anticipated by the defendant in the absence of the abatement of such practice and the prohibition and prevention thereof by it.

5. A negligent breach of duty owing by one party to another resulting in damage is always actionable. That the defendant owed to the plaintiff the duty charged in this case of using ordinary care to keep the premises in question in a reasonably safe condition for use by him is conceded by it. It does not, however, concede the breach of said duty or concede that the injury to the plaintiff followed as a result thereof. The record, however, sufficiently shows such breach and injury of the plaintiff following as a result thereof. It contends that the proximate and sole cause of the plaintiff's injury was the independent act of its tenant Brislin in setting out the fire which set in operation the forces which caused the plaintiff's injury, with which act the defendant had nothing to do and from which act any act of the defendant was entirely divorced; that, in setting out such fire, Brislin was not acting in any capacity as its agent or representative and was not under its control; that such act of Brislin was not the act of the defendant; that it was not a matter to be reasonably anicipated that, by reason of its failure to provide the required receptacles for trash or trash burners therefor and its failure to keep the premises in a safe condition for use by reason of fire set out thereon, Brislin would set out a fire in the open and violate the ordinance; and that it had no knowledge of such fire before or at the time of the plaintiff's injury and had no reason to be on the lookout for the same or to take any methods to prevent its being set out.

6. The record, however, shows that the premises were being subjected to such use by the various tenants, including Brislin, on frequent occasions for such a length of time that the defendant, in the exercise of ordinary care, should have known of such practices on their part and should have used ordinary care to have abated and prevented such practices and may not say that it could not reasonably have anticipated the act of Brislin in setting out the fire in question in violation of the ordinance. In other words, the record shows that it was not only the duty of the defendant to the plaintiff with respect to such premises to have abated and prevented such practices, but that it negligently breached such duty. Where an independent act in violation of law was of a nature which might have been anitcipated and which it was the defendant's duty to provide against, it will be liable for a breach of such duty, notwithstanding that the injuries were produced by the intervention of an act of such character. [45 C. J., art. 495, p. 936.]

The defendant had a representative, Mr. W. Roy Moore, who called at the premises several times monthly to collect the rents from the various tenants and who, at such times, looked the premises over and looked after the maintenance and repair. While the record

does not show that this representative was ever present at any time when a fire was burning in the open, it does show that the point where these fires were made was in plain view and had a charred appearance, indicating that fires had been set out there. In fact, the record shows that the attention of this representative was called by the plaintiff's father to the fact that trash was being burned on the premises by the tenants, out in the open and unprotected, and that there were on the premises no receptacles in which to place it or trash burners in which to burn it and that the situation created thereby was dangerous and that he was asked to have it corrected.

7. The defendant's contention that it had no control of the tenants to prevent them from setting out such fires is answered by the fact that it, as the owner or proprietor of the premises, had such control of the property as to deny to such tenants the privilege and to prohibit and prevent them from setting out such fires. It thus had control of Brislin, along with the other tenants, to prevent the setting out of such fires, although in setting out such fires Brislin and the other tenants might not have been acting in any capacity as its representatives or agents.

8. With the duty upon it to maintain the premises in a reasonably safe condition for the use of the plaintiff and others entitled to use the same, it was liable for any breach of said duty and for any omission in the use of ordinary care to reasonably maintain them in that condition. Its breach of said duty and its omission to do and perform any substantial act in the full performance of said duty were actionable; and it became liable in damages to any one, by reason of such negligent omission and failure, who suffered any injury on account thereof.

In Kupferle Foundry Co. v. St. Louis Merchants' Bridge Terminal Railway Company, 275 Mo. 451, l. c. 457, 205 S. W. 57, l. c. 58 and 59, the Supreme Court said (quoting from Benton v. St. Louis, 248 Mo. 98, l. c. 110, 154 S. W. 473, l. c. 477) that the party charged with negligence " 'may be held liable for anything which, after the injury is complete, appears to have been a natural and probable consequence of his act or omission.' " Such doctrine is also supported by Dean v. Kansas City, St. Louis & C. R. Co., 199 Mo. 386, l. c. 411, 97 S. W. 910; Zeis v. St. Louis Brewing Ass'n, 205 Mo. 638, l. c. 651, 104 S. W. 99; Brady v. Kansas City, St. L. & C. R. Co., 206 Mo. 509, l. c. 538, 102 S. W. 978, 105 S. W. 1195; Buckner v. Stock Yards Horse & Mule Co., 221 Mo. 700, l. c. 710, 120 S. W. 766; Woodson v. Metropolitan Street R. Co., 224 Mo. 685, l. c. 707, 123 S. W. 820, 30 L. R. A. (N. S.) 931, 20 Ann. Cas. 1039; Hockaday v. Panhandle Eastern Pipe Line Co. (Mo. App.), 66 S. W. (2d) 956, l. c. 959.

It is therefore unnecessary that the party charged should have anticipated the very injury complained of or anticipated that it would

have happened in the exact manner that it did. All that is necessary is that some injury might have happened.

It is true that the connection between a defendant's negligence and a plaintiff's injury may, in some instances, be broken by an intervening cause. In order to excuse the defendant, however, such intervening cause must be either a superceding or a responsible cause. It is a superceding cause, whether intelligent or not, if it so entirely supercedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in the slightest degree, produces the injury. But the connection is not actually broken if the intervening act is such as might, in the natural and ordinary course of things, be anticipated as not entirely improbable; and the defendant's negligence remains an essential link in the chain of causation. If the defendant is negligent and his negligence combines with that of another or with any other independent intervening cause, he is liable, although his negligence is not the sole negligence or the sole proximate cause and although his negligence without such other independent intervening cause would not have produced the injury. [O'Bauer v. Katz Drug Co. (Mo. App.), 49 S. W. (2d) 1065.]

In this case, the intervening act of the tenant Brislin was one which followed in the natural and ordinary course of things from the breach of its duty by the defendant and as a sequence thereto. It operated and combined with the defendant's negligence in its breach of duty throughout. It did not entirely supercede and destroy the operation of the defendant's negligence, but followed as a natural sequence thereto and operated in connection therewith.

In the nature of things, there is in every transaction a succession of events more or less dependent on those preceding; and it is the province of the jury to look at such sequence of events or facts and ascertain whether they are naturally and properly combined with each other by a continuance of sequence or are dissevered by a new sequence; and this must be determined by a view of the circumstances existing. [McWhorter v. Dahl Chevrolet Co., 229 Mo. App. 1090, 88 S. W. (2d) 240; Kid v. Chicago, R. I. & P. R. Co., 310 Mo. 1, l. c. 28-29, 274 S. W. 1079; Hood v. Baltimore & O. R. Co., 302 Mo. 609, 259 S. W. 471; Laughlin v. Kansas City Southern R. Co., 275 Mo. 459, 205 S. W. 3; Johnson v. Ambursen Hydraulic Const. Co., 188 Mo. App. 105, 173 S. W. 1081; Gilman v. Fleming (Mo. App.), 265 S. W. 104.].

The liability of a person charged with negligence does not depend on the question whether, in the exercise of reasonable prudence, he could or should have forseen the very injury complained of; but he may be held liable for anything which, after the injury, appears to have been a natural or probable consequence of his act or omission. [McWhorter v. Dahl Chevrolet Co., *supra*; Buckner v. Stock Yards

1084

Horse & Mule Co.; *supra*; Obermeyer v. F. H. Logeman Chair Mfg. Co., 120 Mo. App. 59, 96 S. W. 673, 229 Mo. 97, 129 S. W. 209.]

9. Whether or not a given or a stated act is the proximate cause of an injury may depend upon other and surrounding facts and is ordinarily a question for the jury. [Pentecost v. St. Louis Merchants' Bridge Terminal R. Co., 334 Mo. 572, 66 S. W. (2d) 533; Young v. Wheelock, 333 Mo. 992, 64 S. W. (2d) 950; McWhorter v. Dahl Chevrolet Co., *supra*.]

It is not a question of science or of legal knowledge. It is to be determined as a fact from all of the attending circumstances in evidence. [McWhorter v. Dahl Chevrolet Co., *supra*.]

The demurrer was properly ruled by the trial court.

10. The second point made by the defendant is that the court erred in giving instruction No. 1 for the plaintiff in that such instruction (a) submitted no actionable negligence, (b) gave the jury a roving commission to find against the defendant on any theory which it might evolve, and (c) authorize the jury to find for the plaintiff on account of the failure of the defendant to police the premises and further authorize the jury to find for the plaintiff upon speculation and conjecture.

11. We do not consider that the instruction is subject to the criticisms made. The defendant does not point out wherein such instruction failed to submit actionable negligence on the defendant's part. It did require the jury to find certain facts which, if found to be true by the jury, embraced matters which constituted actionable negligence on the part of the defendant.

12. Its second contention—that such instruction gave the jury a roving commission to find against the defendant upon any theory which it might evolve—likewise has no foundation.

As a basis for such contention, it argues that one of the grounds of recovery submitted therein was that the defendant knew, or by the exercise of ordinary care could have known, of the alleged habit or practice of the tenants of burning trash in the open in time, by the exercise of ordinary care, "to have abated and stopped the making of such fires or caused the same to be abated and stopped" without, in its hypotheses, having submitted any specification as to how or in what manner the defendant could or should have abated and stopped or caused to be abated and stopped the making of such fires. The instruction clearly required the jury to find the management, possession, and control of said premises to be in the defendant; and, if so found, then the defendant, through its control of said premises and the tenants therein in the use thereof, could have, in the exercise of ordinary care, stopped and abated said fires. Moreover, if the instruction was not sufficiently specific in that regard, it was the duty of the defendant to have offered an instruction qualifying the alleged indefiniteness. [Rogers v. Mobile & O. Railroad Co., 337 Mo. 140, 1.

c. 151, 85 S. W. (2d) 581; Jenkins v. Wabash Ry. Co., 335 Mo. 748, l. c. 762, 73 S. W. (2d) 1002; Rogles v. United Rys. Co. (Mo.), 232 S. W. 93, l. c. 97; Conway v. Silver King Oil & Gas Co. (Mo. App.), 94 S. W. (2d) 942, l. c. 947, 948; Essenpreis v. Elliott's Dept. Store Co. (Mo. App), 37 S. W. (2d) 458, l. c. 462; McGinnis v. St. Louis Public Service Co. (Mo. App.), 44 S. W. (2d) 886, l. c. 888; Corbin v. Kansas City, C. C. & St. J. R. Co. (Mo. App.), 41 S. W. (2d) 832, l. c. 838; Schweig v. Wells (Mo. App.), 26 S. W. (2d) 851, l. c. 853; Kiehling v. Humes-Deal Co. (Mo. App.), 16 S. W. (2d) 637, l. c. 641.] The contention is without merit.

13. The defendant contends that the instruction submitted general negligence and cites a number of cases alleged to be authority for the proposition that an instruction which submits general negligence is erroneous. A reading of these cases will reveal that they are of two classes: those contending that such an instruction, because of its hypothesis, was broader than that contained in the petition (as in the case of Pevesdorf v. Union Electric Light & Power Co., 333 Mo. 1155, 64 S. W. (2d) 939, cited by the defendant); and those wherein the instruction submitted an hypothesis of general negligence (as in Owens v. McCleary, 313 Mo. 213, 281 S. W. 682). An examination of the instruction in this case fails to show that it submits or purports to submit an hypothesis based upon general negligence or that it was broader in its submissions than was the petition. The instruction complained of is predicated upon the ability of the defendant, through its possession and control of the premises and the tenants therein in the use thereof, to have prevented or stopped or abated the fires in question or caused them to be stopped or abated by the exercise of ordinary care. There is no basis for the defendant's contention.

14. The last criticism by the defendant of the instruction in question is that it erroneously authorized the jury to find for the plaintiff on account of the failure of the defendant to police the yard and erroneously authorized the jury to find for the plaintiff upon speculation and conjecture. It is not pointed out wherein the instruction required the defendant to police the yard. It was the duty of the defendant, by the exercise of ordinary care, to keep the yard in a reasonably safe condition for use. To do so, it was required to inspect, observe, and correct conditions therein which rendered its use dangerous and unsafe; and, in doing so, its act was not subject to the criticism that it policed the yard in the objectionable sense of that term, as used by the defendant. [Kiehling v. Humes-Deal Co., *supra.*]

The defendant's criticism is without merit.

15. Likewise, the criticism that it authorized a verdict for the plaintiff on speculation and conjecture is without merit. It bases its criticism in this regard upon that portion of the instruction author-

izing a verdict for the plaintiff upon the failure of the defendant to abate or stop fires which, it contends, constituted a roving commission to the jury to evolve some theory by which the defendant could and should have abated and stopped fires.

We have already determined herein that such instruction does not, in the particulars complained of, give to the jury a roving commission.

16. We have no fault to find with the rule announced in Coble v. St. Louis-San Francisco R. Co. (Mo.), 38 S. W. (2d) 1031, l. c. 1036 (quoted from Byerly v. L. P. & Ice Co., 130 Mo. App. 593, 109 S. W. 1065, l. c. 1067), cited and relied upon by the defendant, which is as follows:

" 'The rule is elemental that the burden remains with plaintiff to the end of the case to establish by proof, not only the fact of the negligence averred, but also to show a direct connection between such negligence and the injury. Where the ultimate fact is not susceptible of direct proof, its existence must directly follow as a reasonable conclusion from its basic facts and circumstances, and it may be stated as an axiomatic rule that whenever court or jury are left by the evidence in a situation where, in order to find the ultimate fact alleged, they must piece out the facts adduced with conjecture or supposition, the plaintiff must be held to have failed in his proof.' "

We think that the plaintiff here has met the burden upon him and has brought his case within the rule.

In this case, if the defendant had performed its duty and had stopped, abated, and prevented the setting out of fires in the open by its tenants upon the premises and had not breached its duty in such particulars, the plaintiff's injuries would not have occurred. It was by reason of the breach of its duty that the plaintiff's injury was made possible. Such breach was the proximate cause of such injury, which followed as a direct result thereof.

17. The third point made by the defendant must also be denied. There was no error, as charged, in said point in the refusal by the trial court of the defendant's requested instruction No. 12. It was not only misleading, but it was a comment upon the evidence. Moreover, the matters sought to be submitted by such instruction had been fully covered by instructions Nos. 10 and 11 given by it; and, for such further reason, it was properly refused. [Arnold v. May Department Stores Co., 337 Mo. 727, 85 S. W. (2d) 748; Robinson v. O'Shanzky (Mo. App.), 96 S. W. (2d) 895.]

18. The fourth and last point made by the defendant relates to the admission in evidence of the deposition of Roy Moore. The point, as made, is as follows:

"The court erred in admitting the deposition of Roy Moore. Moore was present in the court, was not a party, and his testimony in the deposition was not an admission of or binding upon defendant, and constituted hearsay."

The deposition was offered by Mr. Greenebaum, counsel for the plaintiff, as admissions against interest of the defendant. It was given on February 14, 1936.

Upon such offer being made, it was objected to by Mr. Henry S. Conrad, of counsel for the defendant, for the reason that Mr. Moore was present in court; that he was not a party to the suit; and that any admissions made by him were not binding upon the defendant. The objection was overruled. Mr. Conrad later added the further objection that it was hearsay testimony, which further objection was by the court overruled. It was then stated by Mr. Conrad that it was desired that the objections which had been made should be considered as going to the deposition as a whole and to each part thereof which might be read, upon the grounds indicated. This objection was likewise overruled. Thereupon, Mr. Greenebaum proceeded to read the deposition in evidence.

· The defendant contends that the court erred in admitting the deposition over its objections thereto as made, unless Mr. Moore could be said to have been acting as agent and representative of the defendant when he gave his deposition in February, 1936, prior to the trial in May, 1936.

The record does show satisfactorily that Mr. Moore was the defendant's representative in charge of the property in question (managing the same and looking after, its maintenance and repair, its rentals, and the collection of the rents therefor), not only at the time of the plaintiff's injury and for a long time prior thereto but afterwards, including the date upon which the deposition in question was given. The record shows that Mr. Moore was the only person in charge of the premises in question at the time that the plaintiff was injured and at the time that he gave his deposition. There is no evidence in the record that any agent or representative of the defendant in its direct employ other than Mr. Moore had or could have had any knowledge concerning the condition or use of the property or the circumstances surrounding the injury of the plaintiff.

The defendant, in its brief in this case, referring to the time of the plaintiff's injury at the time in question and subsequent to January, 1934, said:

"—the defendant Bank looked after the property through a Mr. Roy Moore, an employee in charge of the rentals in the defendant's Trust Department. For some time prior to November, 1934, a Mrs. Stivers, a tenant of one of the apartments, had been a sort of local manager of the property by an arrangement with Mr. Moore, renting to some tenants and in some cases collecting rents, although Mr. Moore came around several times a month taking up the rents collected by Mrs. Stivers. In November, Mrs. Stivers moved away and thereafter

Mr. Moore was the only person regularly employed and paid by the Bank, who collected rents and looked after the property.

\* \* \* \*

It appeared from the evidence that Mrs. Stivers, during the time she had been local manager, had acquired through her husband a large, empty metal oil barrel or drum with one end knocked out which she maintained in the yard about ten feet from the Elm tree and in the rear of the apartment, and in which various tenants, both of the apartment and of the houses, at various times burned trash. When Mrs. Stivers moved away in November, 1934, she took the drum or barrel which had been so used as a trash burner with her, and from that time until the time of the injury to plaintiff, on February 17, 1935, there was no regular trash burner and no barrel or drum similar to the one Mrs. Stivers had maintained for the burning of trash.''

Although not so limited by the plaintiff at the time that the offer was made, the plaintiff now contends in its brief that the deposition was offered as admissions against the interest of the defendant to show knowledge on the part of the witness (as agent) and therefore notice and knowledge to the defendant corporation, through the witness, of the conditions prevailing on the premises and the use to which those premises were being put. If it so shows, the original offer as made was broad enough to permit such showing.

The defendant contends that the deposition of a witness present in court at the time of the trial can not be read in evidence, unless the witness is a party to the suit and then only as an admission as against interest of the witness as a party and affecting him and not as against any other party. It relies on the case of Donet v. Prudential Insurance Company of America (Mo. App.), 23 S. W. (2d) 1104, l. c. 1106, and cases cited to sustain its contention. The case seems to support such contention. The defendant admits in its brief, however, that there is an exception to such rule, where the witness whose deposition is offered was, at the time the injury occurred and the deposition was given, acting as the agent and representative of the defendant in the matters concerning which the testimony was given. From the record, above referred to, the deposition in this case comes within the exception.

The general rule is that an admission or declaration of an agent or employee binds the principal only when made during the continuance of the relationship and in regard to the transaction then pending. [Redmon v. Metropolitan Street R. Co., 185 Mo. 1, 84 S. W. 26; Gaines v. Berkshire Life Ins. Co., 228 Mo. App. 319, 68 S. W. (2d) 905, l. c. 908.]

However, the existence or absence of knowledge may be shown by declarations of the person whose knowledge is important, even

though such declarations were made a considerable time before or after the injury involved in the inquiry, provided that there is not such an element of remoteness as destroys materiality. [22 C. J., art. 302, p. 284.]

*Post rem* statements of agents may be introduced in evidence for the purpose of showing or tending to show knowledge. [Fisher v. Pullman Co., 212 Mo. App. 280, 254 S. W. 114; Wainwright v. Westborough Country Club (Mo. App.), 45 S. W. (2d) 86; Pulsifer v. City of Albany, 226 Mo. App. 529, 47 S. W. (2d) 233; Yarbrough v. Wisconsin Lumber Co. (Mo. App.), 211 S. W. 713; State ex rel. S. S. Kresge Co. v. Shain (Mo. App.), 101 S. W. (2d) 14.]

When the plaintiff offered the deposition as an admission against interest of the defendant, the defendant did not seek to have the deposition limited to that purpose but made the objection that the witness was present in court and was not a party to the suit and that the admissions in such deposition were not binding on the defendant and that the testimony was hearsay.

The deposition contained statements of the witness tending to show knowledge on his part of the conditions prevailing upon the property in question at the time of the plaintiff's injury and for a long period prior thereto, which he acquired in the course of his employment by the defendant and which was material upon the trial. Such statements were admissible for the purpose of showing knowledge upon his part of such conditions but not as proof of such conditions. [State ex rel. S. S. Kresge Co. v. Shain, *supra.*]

This is true, notwithstanding that such statements are found in a deposition which ordinarily could not have been read on the trial because the witness was not a party to the suit and was present in court at the time that it was offered.

The deposition—being competent for the purpose of showing the statements of such witness, amounting to admissions of knowledge upon his part, and for no other—was, when offered in evidence, admissible for the purpose of showing knowledge upon his part and could not have been properly excluded. It was the duty of the defendant, if it desired, to protect itself against such statements and parts thereof therein, if any, which were not competent for the purpose of showing knowledge or which were otherwise incompetent for any purpose, by proper objections thereto, based upon such grounds, and by proper proposals for the withdrawal of such statements and parts and for the limitation of the consideration of the evidence admitted to the purposes for which it was competent. In the absence of such objections and request for such withdrawal and limitation, the defendant can not now complain of the admission of the deposition in evidence.

The judgment is for the right party and should not be disturbed. [U. S. Fidelity & Guaranty Co. v. Fidelity National Bank & Trust Co. (Mo. App.), 109 S. W. (2d) 47, 49.]

The judgment of the trial court is affirmed. All concur.