Daisy BROWN, Appellant,

v.

**KROGER COMPANY, a corporation,
Respondent.**

No. 48293.

Supreme Court of Missouri,

Division No. 1.

March 13, 1961.

Briney & Welborn, Bloomfield, Kearby & Calvin, Poplar Bluff, for appellant.

Henson & Henson, Poplar Bluff, for respondent.

COIL, Commissioner.

The appellant, Daisy Brown, as plaintiff below, sought to recover $25,000 as damages for injury she allegedly sustained as the result of the negligence of defendant below, Kroger Company, a corporation. At the close of plaintiff's evidence the trial court directed a defendant's verdict. Plaintiff appealed from the ensuing judgment and contends that the trial court erred in so ruling for the reason that her evidence was sufficient to make a submissible case.

Defendant operated a supermarket at Dexter. On February 28, 1958, plaintiff and her husband were customers in that store. Plaintiff wished to buy some bottles of Pepsi-Cola and, having often traded there, knew they were located on the bottom shelf of a 3-shelf soda section. She grasped the handle of a cardboard carton containing six bottles of Pepsi-Cola, intending to place it in the self-service cart she was using. Suddenly she realized that a bottle had fallen from the carton to the floor, had broken, and that her leg was wet and bleeding. She then placed the carton on the floor on its side, stepped back and discovered that she had a cut just above the ankle on the inside of her lower limb. Prior to that time there were no empty cartons or broken glass on the floor in that area and there was no sign or notice warning customers of the danger in picking up old, worn cartons. Plaintiff did not strike the carton or its contents against anything as she moved it from the shelf. There was no person other than plaintiff's husband in the vicinity at the time.

Mr. Brown was behind his wife and realized that she had picked up an item and then heard something hit the floor. He then noticed that soda was running on the floor and that his wife's leg was bleeding. He saw a broken bottle and a cardboard carton on the floor on its side with other bottles of Pepsi-Cola still in the carton. He noticed that part of the bottom of the carton was torn loose at the corner. .

A Kroger clerk testified that he was at the cash register, heard a noise, went to the soda section and saw a cardboard carton on the floor "in the middle" of the broken soda bottle and did not notice whether the carton was wet; that it was a "Mack" carton and its bottom had been torn loose. He shoved it under the shelf and later, either the next day (February 28, 1958, was a Friday) or the following Monday, examined it and saw that it looked as though it was an old carton that had been wet and had dried.

Defendant's answers to interrogatories established that Max Merriman was the Kroger store manager on the day of the accident and on April 8, 1959, the date when his deposition was taken by plaintiff; that among his duties as store manager were to "see that all displayed merchandise is properly price-tagged or stamped" and to "promote customer and employee safety within in the store at all times."

Over defendant's objection these parts of the store manager's deposition were admitted as admissions to show notice to and knowledge of Kroger as to the danger involved in using soda cartons that theretofore had been wet: that a bottle of Pepsi-Cola was the heaviest bottle of soda Kroger handled except one; that a carton of six full bottles of Pepsi-Cola weighed ten pounds; that there had been prior occasions when soda bottles had fallen through the bottoms of cartons; that a cardboard carton is "not fit for re-use after it has been wet and saturated with water, the bottom comes out"; that there were occasions when "all vendors, on a rainy day, drive up with no tarp on their truck, with an item like that, with a paper carton, and come in and the bottoms be wet and soft"; that on occasions he as store manager had called the "plants" about the wet cartons and had had wet and damp cartons taken off the shelves when he would observe the weakened condition of the carton after it had been placed on the shelf; that there had been previous similar incidents involving Pepsi-Cola cartons and other kinds of cartons.

Defendant contends that those portions of the store manager's deposition were not admissible in evidence because the manager was not a party, was admittedly present in the courtroom and available to testify, and the parts offered "went beyond the testimony necessary to show knowledge and included testimony on the issue of negligence and was therefore inadmissible under the hearsay rule."

The record shows that the portions of the deposition in question were offered as

admissions to show defendant's notice and knowledge of the condition of the cartons. The objection in the trial court was only that the store manager was not a party and was present in the courtroom and available to testify. Indeed defendant specifically stated that he was not objecting "to the admissibility of that type of evidence, it is your manner in offering the evidence at this time. I don't think you are entitled to do it by deposition when the witness is available in the court room, and the only exception would be if he was a party to the lawsuit." It is apparent that defendant did not object on the ground that part of the proffered statements did not tend to show knowledge on the part of defendant but tended to prove negligence.

Defendant did not at the trial and does not in its brief point out wherein the parts of the store manager's deposition read in evidence "included testimony on the issue of negligence." It is not apparent to us that any of the admitted statements did not pertain to matters tending to show knowledge on the part of the defendant through its store manager. We need not therefore consider the question whether deposition statements of the store manager pertaining to matters within the scope of his authority at the time of the accident and at the time of the deposition were admissible against his employer as tending to prove negligence on the employer's part, even though the manager was not a party and was available as a trial witness. We consider and rule only the question whether the store manager's deposition statements tending to show notice to and knowledge on the part of his employer, the defendant in the case on trial, were admissible for the purpose of showing such notice and knowledge even though the store manager was not a party to the lawsuit and was in the courtroom at the time the parts of his deposition were offered.

■ Plaintiff's averments of defendant's specific negligence made the existence of the knowledge of the Kroger Company a material fact question. The deposition statements made by Kroger's store manager pertained to matters within the scope of the manager's employment both at the time of the accident and at the time he gave his deposition. The statements were offered against Kroger as tending to prove its knowledge as to whether wet soda cartons were supplied and the suitability of such cartons for use as containers for bottles of Pepsi-Cola. Such knowledge could have been acquired by Kroger only through its proper employee or other agent and evidence tending to show that knowledge in the form of deposition statements by its employee whose assigned duties encompassed the necessity that he acquire knowledge on that subject in order to fulfill his duties as store manager was admissible on the question of Kroger's knowledge, even though the manager was not a party and was present and available to testify at the trial. Henry v. First National Bank of Kansas City, 232 Mo.App. 1071, 115 S.W. 2d 121, 132[29], 133[32] [33] [34]; State ex rel. S. S. Kresge Co. v. Shain, 340 Mo. 145, 101 S.W.2d 14, 17[2–5]. See also 31 C.J.S. Evidence § 348, pp. 1121, 1122, and Bowyer v. Te-Co., Inc., Mo., 310 S.W.2d 892, 895[1].

■ Defendant calls attention to Section 492.400 RSMo 1949, V.A.M.S., providing when a deposition may be read in evidence. That statute, of course, does not affect the admissibility of portions of a deposition where they are admissible as admissions against the interest of a party; and that is true even though the deponent is present in court. Henry v. First National Bank of Kansas City, supra, 232 Mo.App. 1071, 115 S.W.2d 133[33].

The parties agree that the principles of law involved in storekeeper-invitee cases generally are applicable to the present facts. Certainly no new question is presented in so far as concerns those principles of law. The decisive questions here pertain to the application of those well-established principles to these particular facts.

Defendant owed plaintiff-invitee the duty to exercise ordinary care to keep its premises reasonably safe for her use including the exercise of ordinary care to avoid causing injury to her while she was on defendant's premises properly engaged in the usual activities of a shopper following the procedures and using the facilities provided. The basis for liability in this type of case is a knowledge of the storekeeper of an unsafe condition or of a danger to a shopper, superior to that of the invitee. Consequently, the storekeeper must have actual or constructive knowledge of the danger and he is not liable for injury which results from a danger that is obvious or is or should be as well known to the invitee as to the storekeeper. And it follows, of course, that there is no duty on the storekeeper to warn if the danger is obvious or is or should be as well known to the invitee as to the inviter because a warning would not acquaint the invitee with any fact that he did not or should not know. Stafford v. Fred Wolferman, Inc., Mo., 307 S.W.2d 468, 473[1–3]; Barken v. S. S. Kresge Co., Mo.App., 117 S.W.2d 674, 678[1–3]; 65 C.J.S. Negligence § 45a, p. 524.

Defendant contends there was no evidence tending to prove that the carton was defective prior to the incident and, even if so, no evidence that defendant either placed the carton on the shelf or that it had actual or constructive notice of its presence there.

Defendant, to support its contention of lack of evidence to show that the carton was defective, calls attention to the fact that defendant's clerk testified that when he looked at the carton the next day or the following Monday it looked as though it had been wet and had then faded and dried. Defendant insists that the only reasonable conclusion from the clerk's testimony was that the carton had become wet when it was on the floor at the place where the Pepsi-Cola had spilled and, therefore, the fact that the carton on the following day or the following Monday looked as though it had been wet and had dried was no evidence that it was in that condition when plaintiff lifted it from the soda shelf. We do not agree. In the first place the clerk's testimony does not compel the inference that the carton became wet at the time plaintiff placed the carton on the floor on its side with the remaining Pepsi-Cola bottles still in it. The clerk's testimony in that respect was this: "Q. When you pushed the carton under the shelf, did you notice whether it was wet or not then? A. No, I never noticed then. Q. Where was it with reference to this bottle of soda on the floor? A. Well, I would say it was right in the middle of it." That testimony supports an inference that "right in the middle of it" may have meant in the middle of the broken glass that was on the floor. Furthermore, there was no testimony as to where the Pepsi-Cola that came from the broken bottle went, i. e., whether it spread over a large area, formed a puddle, or what the situation was with respect to the wetness on the floor. But more important is the fact that defendant's contention overlooks the positive testimony that the bottom of the carton gave way and the bottle of Pepsi-Cola fell through a hole in the bottom of the carton prior to the time plaintiff placed the carton on the floor. It seems apparent, therefore, that the carton was defective as it sat on the soda shelf. Consequently, even if the side of the carton got damp or wet as it laid on its side after the accident, it was unlikely that the bottom of the carton then got wet, and, in any event, the conclusion is not compelled that the carton was not defective by reason of having been wet and having dried prior to the time plaintiff attempted to move it from the soda shelf to the self-service cart.

To support its contention that defendant had no knowledge, actual or constructive, that the defective carton was on the shelf, defendant suggests that its store manager's admissions that he knew that cartons which had been wet and had then dried were not

fit for use and that he knew that soda of various kinds was sometimes delivered to that store in cartons unfit for use, tended only to prove a fact which everyone should have known, viz., that a cardboard carton becomes weakened by use. It may well be, as defendant contends, that plaintiff, as a mature woman, knew or should have known that to reuse pasteboard cartons which had theretofore been wet and had dried might be a dangerous practice. The decisive fact, however, is that there was no evidence that plaintiff knew, and certainly she should not be charged with knowledge as a matter of law, that defendant would provide such unfit and dangerous cartons on its soda shelf and invite her and other customers to remove those defective and dangerous cartons and carry them from the store or to a cart; at least in the absence of a warning which would cause plaintiff and other customers to inspect each carton before they removed it from the soda shelf.

Defendant contends further that there was no evidence to show actual knowledge of the condition of this particular carton or that it had been on the shelf a sufficient length of time for an employee to have inspected it. The evidence did not show who placed the carton of Pepsi-Cola on the shelf. Inasmuch as there was evidence that one of the duties of the store manager was to see that all displayed merchandise was properly price-tagged or stamped, it would not be unreasonable for a jury to conclude that one of defendant's employees placed the carton on the shelf. Assuming, however, that the various soda suppliers placed the cartons on the shelves, still, in view of the knowledge which the store manager had of prior instances in which wet or damp cartons had been placed on the shelves and of the fact that cartons which had been wet and had dried were unfit for use, the jury reasonably could have found that defendant owed invitees the duty to inspect the cartons either before they were placed on the shelves or before they were made available to customers.

Contrary to defendant's above-noted contentions, we are of the opinion that the evidence, considered from a standpoint favorable to plaintiff, was such that the jury reasonably could have found these facts: Just after plaintiff picked up a carton of six full bottles of Pepsi-Cola, a portion of the bottom of the carton gave way and one of the bottles fell to the floor, broke, and, as a result, plaintiff was injured; the reason the portion of the bottom of the carton gave way was that the carton had theretofore been wet and had dried; the carton in question was not fit for use for the purpose it was intended to serve as it sat on defendant's shelf and was dangerous when so used; defendant knew or in the exercise of ordinary care should have known that some of the cardboard cartons, filled with bottles of soda, which were delivered to its store might be defective by reason of those cartons having been wet and soft at the time they were delivered; defendant, in the exercise of ordinary care, reasonably could have foreseen the likelihood of some injury to its invitees by reason of permitting such defective cartons to be and remain on its soda shelves; defendant knew or in the exercise of ordinary care should have known that cartons in such condition constituted a danger to a customer who picked up such a carton containing six bottles of soda weighing ten pounds; the carton of Pepsi-Cola involved was placed on defendant's shelf either by defendant's employees or by the supplier of Pepsi-Cola; plaintiff did not know of the defective condition of the carton which she picked up and did not know and, in the exercise of ordinary care, should not have known, that defective cartons would be found on defendant's soda shelf.

Inasmuch as the evidence supported the foregoing findings, the jury reasonably could have reached the conclusion that defendant failed to exercise ordinary care to avoid causing injury to plaintiff while she was an invitee on defendant's premises properly engaged in the routine procedure and properly using the facilities defendant

had provided for shoppers, in that defendant was negligent in permitting the defective carton to be on its soda shelf for sale to invitees without warning plaintiff of the necessity to inspect each carton for its suitability for the purpose it was intended to serve before removing it.

The judgment is reversed and the case is remanded for a new trial.

HOLMAN and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.