206 So.2d 882

**The KROGER COMPANY**

**v.**

**Mrs. John W. GOODHEW, Jr., et al.**

**6 Div. 393, 393–A.**

Supreme Court of Alabama.

Jan. 11, 1968.

Rehearing Denied Feb. 8, 1968.

Porterfield & Scholl, Birmingham, for appellant.

Whitmire, Morton· & Coleman, Birmingham, for appellees Goodhew.

Baker, McDaniel &· Hall, Birmingham, for Royal Crown Bottling Co.

SIMPSON, Justice.

Mrs. Goodhew sued The Kroger Company and Royal Crown Bottling Company for injuries she received when a bottle of Diet-Rite Cola exploded after falling from a pasteboard carton in the Kroger store. The companion suit was filed by her husband,

seeking damages for loss of services. The jury returned a verdict in favor of the plaintiffs against Kroger but absolved Royal Crown of any liability.

Briefly, the facts are these: Mrs. Goodhew has been doing her weekly grocery shopping at the Kroger store for several years. On the day of the injury she had bought several items and was at the checkout counter with her shopping cart when she remembered that she needed some soft drinks. Without the cart she returned to the soft drink counter and selected a carton of Diet-Rite Cola. As she neared the checkout counter one of the bottles fell to the floor and exploded, causing the severing of the Achilles tendon in her leg. There was a great deal of testimony on the extent of the injury, which was severe.

One of the witnesses testified that he was working at the checkout counter when the accident occurred. He testified that the pasteboard carton which is involved appeared to be wet on the bottom and that the damaged end of the carton was wetter than the rest of it. This witness further testified that he had known of bottles of beverage being broken on the display area.

. The manager of Kroger testified that Diet-Rite Cola and other beverages are displayed for sale in the Kroger store on a counter known as the beverage counter. Each bottler has a designated area with a designated amount of space for the display of the beverage. Each bottler, as he delivers his beverage, stacks the cartons in the designated place. The cartons are arranged by the bottlers and they are stacked with a plastic strip between each layer of cartons. This witness testified that he knew from experience that bottled carbonated beverages would explode when dropped.

The manager of the store was present when the plaintiff was injured. He testified that the carton with five bottles left in it was sitting on the floor in a pool of spilled beverage and blood. He testified that after he returned to the store after taking Mrs. Goodhew to the hospital he in-

spected the carton and found that the bottom of it was wet but that one end, the end which gave way, was wetter than the rest of it.

The manager testified that he did not designate particular employees to inspect the beverage counter periodically to see whether or not bottles have been broken there. "I do that mostly myself." He further testified, in substance, as follows:

Bottles are broken in numerous places in the store, and the beverage counter is one of the places where the bottles are broken. Usually when a bottle has been broken, they know about it and clean it up; but there have been days when they were busy and couldn't hear a crash and someone would come and tell them that a bottle was broken. On occasions when he discovers a broken bottle in the display area, he usually stands there until it is cleaned up. He has known of occasions when bottles have been broken at the beverage counter. He does know that cartons do sometimes get wet, and that when wet the cartons are weakened. When the bottler's route salesmen delivered cartons of drinks to Kroger, he (the manager) did not make any inspection to determine whether or not the cartons were safe. No inspection was made to see if any of the cartons were torn. In the Kroger store, there is a lot of traffic every day of the week. The R. C. Cola route salesman makes only one delivery a week to the store. At that time he arranges the display of Diet-Rite Cola. Thereafter, the display is under the management and care of Kroger employees. Mrs. Goodhew was injured on Wednesday. The Diet-Rite Cola salesman made the last delivery of Diet-Rite Cola to Kroger on Monday morning next before the accident.

This witness further testified that on days when it has been raining he stands at the back door of the store to check to see that the cartons are not wet when delivered to the store; also, that on occasions when he found a wet carton sitting on the floor, he cleaned the bottles, dried them, and put the bottles in another carton, if he had a good used carton in the store. He does not remember whether he did or did not find a wet carton sitting on the floor on Monday, Tuesday, or Wednesday, next before Mrs. Goodhew was injured; if he did, he doesn't know of it. He would not say that he did not. He has rejected defective cartons, but has no recollection as to whether the defective cartons were or were not R. C.'s.

This witness also testified that he did not know the condition of the carton when it came into the store but he did inspect it after the accident and stated that he could not understand how it carried any bottles in the condition it was in.

The route salesman for Royal Crown testified that he delivered beverages to Kroger's store every Monday. He testified that he never delivered any defective cartons to the Kroger store. He further testified that at times he had found soft drinks and other liquids spilled in the R. C. display area; also that on some occasions he had found paper cups and open drinks in the display, sitting between the cartons.

There was evidence on behalf of Royal Crown to the effect that it is normal procedure to inspect and dispose of any carton which appears to be in a weakened condition and if it is discovered upon inspection that a carton has been wet, they always throw it away.

■ The appellant has made 112 assignments of error. The record in this case covers 449 pages of transcript paper. The appellant has stated five propositions of law. The first four make the point that a seller of a product manufactured by another, who has no knowledge that the product is dangerously defective, and has no reason to know that it might be, has no duty to inspect it. It is the contention of appellant then that under the law there is no duty on Kroger to inspect the cartons which contain cold drinks to determine whether they are defective or not. In this connection the appellant assigns error in the court's giving at the request of Royal Crown the following written charge:

"The court charges the jury that the Kroger Company, a corporation, owed a duty to the plaintiff, Mrs. John W. Goodhew, to inspect to see if defective cartons had been delivered to the store before they were made available to customers of the store. You may consider whether or not any such inspection was made in arriving at your verdict in this case."

Is this a correct statement of the law, or does the charge, as contended by the appellant place a greater duty on the seller, here Kroger, than the law requires?

We think not. The appellant argues that Kirkland v. Great Atlantic & Pacific Tea Co., 233 Ala. 404, 171 So. 735 requires a contrary conclusion. It is true that there this court held:

"In this day, the grocer's stock consists in much of canned goods, goods in bottles, cartons, sacks, packages of great variety, put up under pure food regulations, and sold at retail in the unopened package. In common reason the grocer could not inspect the contents of every sack of flour he handles. No one expects him to do so. To impose a legal duty so to do is to exacting. The legal responsibility should rest where it belongs, on him who made the package and enclosed poisonous substances therein."

However, a close reading of the foregoing will indicate that the court in that case was dealing with a product in a sealed container (a sack of flour which contained poison) and it was recognized that the retailer of the package had no opportunity and hence no duty to inspect the contents thereof. Such is not the case before us. Here the plaintiff was injured because the cardboard carton which held a ten-pound burden gave way because it was wet on the bottom. We do not believe this analagous to the so-called sealed package doctrine involved in the Kirkland case, supra.

The manager of Kroger's in this case testified that he was aware that cartons were sometimes delivered in a wet condition, that sometimes things were spilled in the beverage section of the store. It is not contended by appellant that the grocer has no duty to keep his premises in a safe condition including displayed items. It is rather the contention of appellant that there is no duty to inspect the item when it is placed on the counter and at that time made available to the customer. It is contended further that since the bottled drinks were sold in the original package supplied by the bottler that the storekeeper had no duty to inspect the contents.

We can concur with appellant that the law of Alabama does not impose upon the retailer the duty to inspect the content of sealed packages purchased by him from a reputable wholesaler. However, the evidence will not fit that situation. In the original package cases obviously the seller has no opportunity to inspect the content. In fact many cases have held that the retailer has no duty to inspect the content of bottled drinks (see annotation at 6 A.L.R. 3rd 25, et seq.). However, here the retailer is called upon to inspect the carton where the evidence is that he knew that a dropped bottle of carbonated beverage would explode.

The Supreme Court of Missouri has had a case before it identical with the present case: Brown v. Kroger Company, (Mo., 1961) 344 S.W.2d 80. There the court stated:

"Defendant owed plaintiff-invitee the duty to exercise ordinary care to keep its premises reasonably safe for her use including the exercise of ordinary care to avoid causing injury to her while she was on defendant's premises properly engaged in the usual activities of a shopper following the procedures and using the facilities provided. The basis for liability in this type of case is a knowledge of the storekeeper of an unsafe condition or of a danger to a shopper, superior to that of the invitee. Consequently, the storekeeper must have actual or constructive knowledge of the danger and he is not liable for injury which results from a danger that is obvious or is or should be as well known to the invitee as to the storekeeper. * *

"Defendant, to support its contention of lack of evidence to show that the carton was defective, calls attention to the fact that defendant's clerk testified that when he looked at the carton the next day or the following Monday it looked as though it had been wet and had then faded and dried. Defendant insists that the only reasonable conclusion from the clerk's testimony was that the carton had become wet when it was on the floor at the place where the Pepsi-Cola had spilled and, therefore, the fact that the carton on the following day or the following Monday looked as though it had been wet and had dried was no evidence that it was in that condition when plaintiff lifted it from the soda shelf. We do not agree. * * * But more important is the fact that defendant's contention overlooks the positive testimony that the bottom of the carton gave way and the bottle of Pepsi-Cola fell through a hole in the bottom of the carton prior to the time plaintiff placed the carton on the floor. It seems apparent, therefore, that the carton was defective as it sat on the soda shelf."

So here, it is apparent from the evidence in the case that the carton involved was defective as it sat on the display shelf in the grocery store. Appellant contends, however, that there was no way that the defendant storekeeper could have known that this condition existed, and further that the plaintiff was in as good a position as the defendant to discover the defect. We are not persuaded by that argument. On that point the court in the Missouri case, supra, noted:

"To support its contention that defendant had no knowledge, actual or constructive, that the defective carton was on the shelf, defendant suggests that its store manager's admissions that he knew that cartons which had been wet and had then dried were not fit for use and that he knew that soda of various kinds was sometimes delivered to that store in cartons unfit for use, tended only to prove a fact which everyone should have known, viz., that a cardboard carton becomes weakened by use. * * *

"Defendant contends further that there was no evidence to show actual knowledge of the condition of this particular carton or that it had been on the shelf a sufficient length of time for an employee to have inspected it. The evidence did not show who placed the carton of Pepsi-Cola on the shelf. * * * Assuming, however, that the various soda suppliers placed the cartons on the shelves, still, in view of the knowledge which the store manager had of prior instances in which wet or damp cartons had been placed on the shelves and of the fact that cartons which had been wet and had dried were unfit for use, the jury reasonably could have found that defendant owed invitees the duty to inspect the cartons either before they were placed on the shelves or before they were made available to customers."

We, too, agree that it is not an undue burden to require a retailer to inspect items on its shelves when it has knowledge that defective cartons can lead to extreme injury and further that occasionally liquids are spilled on the cartons which produce these defects. Under the evidence in this case it is clear from the testimony of Kroger's manager that he was aware that at times defective cartons were delivered to the store, that at times he has found defective cartons on the display counter, further that he knew that a dropped bottle of carbonated beverage will explode.

All of these factors, it seems to us, place the duty on the retailer to make an inspection to discover defects of this nature.

■■ Further, we are unpersuaded by appellant's argument that this case should be controlled by the "latent defect" cases. It is true that a retailer ordinarily is under no duty to test articles to discover latent defects, or hidden dangers. However, the defect involved here is hardly latent. It seems to us that merely by looking at the cartons

on a periodic basis one could discover whether or not they were wet. Here the complaint charges that Kroger "knew or in the exercise of reasonable care and diligence ought to have known" that the carton was defective. We think that under the facts disclosed here there was evidence which the jury could have believed which would lead to the conclusion that the defendant with due diligence could have discovered that the defective carton was on the shelf.

We have carefully considered other assignments of error made by appellant. Most of the assignments deal with the foregoing and in fact appellant concedes that this is the essential issue in the case. We find in the other assignments no basis for a reversal.

Affirmed.

MERRILL, HARWOOD, and COLEMAN, JJ., concur.